742 So.2d 1051 (1999)
STATE of Louisiana
v.
Nathan BROWN.
No. 99-KA-172.
Court of Appeal of Louisiana, Fifth Circuit.
September 28, 1999.
*1052 Paul D. Connick, District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, George C. Wallace, Jr., Assistant Dist. Attorneys, Gretna, LA, for Plaintiff-Appellee.
J. Rodney Baum, Baton Rouge, LA, for Defendant-Appellant.
*1053 Nathan Brown, Angie, LA., Defendant-Appellant, pro se.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY and SUSAN M. CHEHARDY.
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Nathan Brown, with the attempted aggravated rape of Nadina Newman, a violation of LSA-R.S. 14:42 and 14:27. The matter proceeded to trial before a twelve person jury, at the conclusion of which the defendant was found guilty as charged. As a result of this conviction, the court sentenced the defendant to twenty-five years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals.

FACTS
On August 7, 1997, at approximately 1:00 a.m., Ms. Nadina Newman, after an evening out, returned home to her Metairie apartment. She parked her vehicle, walked through the gate of the apartment complex, and proceeded down the sidewalk towards her apartment. On the way to her apartment, she was attacked from behind by an individual subsequently identified as the defendant. According to Ms. Newman, the defendant wrestled her to the ground, pulled her dress up, and tried to remove her underwear. The perpetrator then tried to separate her legs and "penetrate her with his hard penis." Ms. Newman persistently hit her attacker with her shoe, and he eventually released her, grabbed her purse, and fled. Ms. Newman chased her attacker towards the gate of the complex, but lost sight of him. At trial, Ms. Newman testified that during the attack, she observed the perpetrator's face as there was good visibility in the area, and further that she observed the letters "LLE" on his chest. She further noted that the perpetrator had a strong body odor.
The police arrived shortly after the attack, at which time Ms. Newman gave a statement of what had occurred as well as a description of the perpetrator. Deputy Robert Bracato, who took the victim's statement, testified at trial that Ms. Newman seemed very disturbed and angry and also that her clothes were ripped open. Deputy David Darwin, another Jefferson Parish officer who arrived on the scene, canvassed the apartment complex for the perpetrator. Upon receiving information that a suspect matching the description given by the victim was living in building C, Deputy Darwin went to the defendant's apartment and spoke with the defendant and his mother. Officer Bracato then brought the victim to the back of the apartment complex, at which time she made a positive identification of the defendant as the perpetrator. Following this positive identification, Deputy Darwin obtained a consent to search the apartment from the defendant's mother, with the understanding that the police would not look in any drawers or cabinets. During this limited search, Deputy Darwin seized a pair of black shorts from the apartment, later identified by the victim as the shorts the defendant was wearing during the attack. It was also confirmed during the course of this initial investigation that the defendant did, in fact, have a tattoo on his chest which spelled "MICHELLE." In addition to Ms. Newman's positive identification on the night of the offense, she also unequivocally identified the defendant at trial as the perpetrator.
Following the presentation of the state's case, defense counsel presented five witnesses whose testimony indicated that the defendant was at home at the time of the incident. Ms. Piper Brown, the defendant's mother, testified that on the night of the attack, she was living in the Metairie apartment complex with the defendant, the defendant's two-year-old daughter, her two grandsons, and her fiancé, Michael Gains. She further testified that the defendant had gone to the grocery store for her *1054 earlier that evening, but once he returned, he stayed in the apartment the rest of the night. According to Ms. Brown, the defendant was in his room with his daughter and her two grandsons playing and watching television.
Michael Gains testified that he returned to the apartment at approximately midnight on August 7, 1997, and at that time, Piper Brown was at home with the defendant, her two grandchildren, and the defendant's daughter. Mr. Gains testified that the police knocked on the door at 1:30 a.m., and that at no time did he see the defendant leave the apartment.
Ricardo Brown, Piper Brown's eleven year old grandson, testified that on the evening in question, he had stayed up late watching television and that when he finally went to bed, the defendant was already asleep. He also testified that he was asleep in the defendant's bedroom at 1:00 a.m. and when the police arrived, and further that he never heard the defendant leave the room.
Ranaldo Matthews, another grandson of Piper Brown, testified that on the night of the alleged incident, he was watching television with his brother Ricardo, the defendant, and the defendant's daughter, but that he fell asleep before either his brother or the defendant. He further testified that he slept through the police knocking on the door.
The defendant then testified on his own behalf. According to the defendant, on the night of the incident, he returned home from the grocery store at approximately 6:00 or 6:30, and he stayed home for the remainder of the night. The defendant admitted that he had "MICHELLE" tattooed on his chest, but denied that he attacked the victim.

JUROR CHALLENGES
In his first assignment of error, the defendant asserts that the trial court erred by denying defense counsel's challenges for cause of three potential jurors. Specifically, during voir dire, defense counsel challenged for cause jurors Cathy De-George, Sandra Brehm and Bertrand Fos, alleging that they could not act impartially because of their prior personal experiences as crime victims or as close relatives to crime victims. After the trial court denied these three challenges for cause, defense counsel exercised peremptory challenges to dismiss jurors Fos and Brehm, but accepted juror DeGeorge.
To prove there has been error warranting reversal of the defendant's conviction, the defendant must show (1) the erroneous denial of a challenge for cause, and (2) the use of all peremptory challenges. Prejudice is presumed when a challenge for cause is erroneously denied and a defendant has exhausted all peremptory challenges. State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278, appeal after new trial, 97-177 (La.3/4/98), 712 So.2d 8, cert. denied, ___ U.S. ___, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998); State v. Durham, 94-1036 (La.App. 5 Cir. 4/16/96), 673 So.2d 1103. On the other hand, when a defendant has not exhausted all peremptory challenges, a defendant must show prejudice from the trial court's denial of a challenge for cause. State v. Vanderpool, 493 So.2d 574 (La.1986); State v. Perrilloux, 95-677 (La.App. 5 Cir. 1/30/96), 669 So.2d 7. In the present case, the record reflects that defense counsel exhausted only seven of his twelve available peremptory challenges. Accordingly, we need not reach the issue of whether the trial judge erroneously denied the defendant's challenges for cause of prospective jurors Sandra Brehm and Bertrand Fos.[1] See State v. Koon, 96-1208 (La.5/20/97), 704 So.2d 756, cert. denied, 522 U.S. 1001, 118 S.Ct. 570, ___ L.Ed.2d ___ (1997) and State v. Williams, 98-651 (La.App. 5 Cir. *1055 2/10/99), 729 So.2d 14. We further note that instead of exercising a peremptory challenge against juror Cathy DeGeorge, defense counsel accepted her as a juror. Thus, the defendant waived his right to assert this claim on appeal. State v. Connolly, 96-1680 (La.7/1/97), 700 So.2d 810.
Based on the foregoing discussion, we find that the issues asserted by the defendant in this assignment of error are without merit.

SUFFICIENCY OF THE EVIDENCE
In his second assigned error, the defendant challenges the sufficiency of the evidence used to convict him of attempted aggravated rape.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Honore, 564 So.2d 345 (La.App. 5 Cir.1990), writ denied, 569 So.2d 968 (La.1990).
Aggravated rape[2] occurs when the victim (1) resists the act to the utmost, but whose resistance is overcome by force or (2) is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution or (3) is prevented from resisting the act because the offender is armed with a dangerous weapon. LSA-R.S. 14:42(A)(1)(2)(3). An attempt is committed when a defendant, after having formed the specific intent to commit rape, does an act for the purpose of and intending directly toward the accomplishing of the objective. LSA-R.S. 14:27(A). Mere preparation to commit rape is not sufficient to constitute an attempt. LSA-R.S. 14:27(B).
On appeal, the defendant asserts that the state failed to prove that he specifically intended to overcome the victim's utmost resistance by force. To support his insufficiency argument, the defendant also points out that no threats of great bodily harm were communicated to the victim and further that a dangerous weapon was not involved in this attack. According to the defendant, the record shows that only minimal force was used in any alleged overt act to attempt the rape and thus, the evidence at best, supports a verdict of attempted forcible rape, LSA-R.S. 14:42.1 and 14:27.
The Louisiana Supreme Court has noted the distinction between aggravated and forcible rape. In State v. Parish, 405 So.2d 1080 (La.1981) (on rehearing), appeal after remand, 429 So.2d 442 (La. 1983), the court held that although the legal definition of aggravated rape as set forth in LSA-R.S. 14:42(2) is virtually identical to that of forcible rape, LSA-R.S. 14:42.1, a distinction can be made based on the "degree of force employed and the extent to which the victim resists." The court concluded that "it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed." See also State v. Willie, 422 So.2d 1128 (La.1982). Therefore, it is within the province of the jury to determine the degree of force employed in a particular case and to determine whether the act constituted aggravated, rather than forcible, rape. State v. White, 621 So.2d 884 (La.App. 4 Cir. 1993), writ denied, 93-1557 (La.1/7/94), 631 So.2d 440.
In the instant case, the victim testified that the defendant jumped on her from *1056 behind, wrestled her to the ground, and tried to separate her legs and "penetrate her with his hard penis." She told the jury that her dress was pulled up, and that her attacker tried to remove her underwear. The victim was bleeding from vaginal hematomas as a result of the force with which the defendant was trying to pull off her underwear. There was also testimony that the defendant bit her on the neck and that he ripped open her dress. The victim persistently fought off her attacker by hitting him with her shoe. In describing her continuous wrestling to fight off her attacker, the victim testified "[i]f I didn't fight, I could have been hurt. But the fact that I just wasn't going to allow it to happen, so I fought back."
In the instant case, the jury had before it the responsive verdict of attempted forcible rape but determined that the amount of force employed in this case amounted to an attempted aggravated rape. It is not the function of the appellate court to evaluate the credibility of the witnesses and to overturn the trial court on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983). Such factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Francis, 95-194 (La.App. 5 Cir. 11/28/95), 665 So.2d 596.
Based on the foregoing discussion, we find that the evidence presented was sufficient to sustain the defendant's conviction for attempted aggravated rape, LSA-R.S. 14:42 and 14:27.[3] Accordingly, this assignment lacks merit.

EXCESSIVE SENTENCE
In this assigned error, the defendant complains that his sentence of twenty-five years at hard labor is excessive because he is a first felony offender. He further argues that the trial court erred by failing to comply with the sentencing requirements of LSA-C.Cr.P. art. 894.1.
We initially note that defense counsel did not file the required motion to reconsider sentence nor did he object to the sentence at the time of sentencing. Nonetheless, we will address the defendant's claim of excessiveness. See State v. Williams, 97-970 (La.App. 5 Cir. 1/27/98), 708 So.2d 1086.
The Eighth Amendment to the United States Constitution and Article 1, § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Munoz, 575 So.2d 848 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). In reviewing a sentence for excessiveness this Court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. A sentence within statutory limits will not be set aside as excessive absent manifest abuse of discretion. State v. Bacuzzi, 97-573 (La. App. 5 Cir. 1/27/98), 708 So.2d 1065.
The defendant was convicted of attempted aggravated rape and thus faced a sentencing *1057 exposure of ten to fifty years at hard labor without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:42 and 14:27. The trial judge sentenced the defendant to a midrange sentence of twenty-five years without benefits. We find that the record supports the sentence imposed.
At the sentencing hearing, defense counsel pleaded for leniency, pointing out to the court that the defendant was in his mid-twenties, lived at home with his family, had no criminal record with the exception of a misdemeanor arrest, and was employed at the time of the offense. After considering counsel's argument, the trial judge imposed sentence, stating as follows:
Mr. Brown, the crime you were charged with was an attempted aggravated rape. The testimony was that on a certain night a lady was returning to her house and she was attacked, thrown to the pavementIt was clear beyond any doubt at all that the individual doing the attack attempted to rape her. She was bruised. She was hysterical.
In our society, it goes without saying that such things are violations not only of the law, but of every moral tenet and fiber that we possess as a country. When a person commits such a crime, they not only violate the law, they violate the person being attacked.
In the present case, although the trial judge did not give extensive reasons, we find that the record clearly supports the sentence imposed. Considering the nature of the offense, the degree of force used, the persistence of the defendant, and the harm caused to the victim, we find that the sentence of twenty-five years, half the possible maximum sentence, is not excessive. Accordingly, we reject the issues raised by the defendant in this assignment of error.

FAILURE TO ADVISE OF POST SENTENCING TIME DELAYS
The defendant also asserts that the trial court erred by failing to advise him of the time delays for post conviction relief and appeal. The state concedes that the trial judge failed to inform the defendant of the prescriptive period for post conviction relief as is mandated by LSA-C.Cr.P. art. 930.8 C. Accordingly, we instruct the trial court to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof in the record that the defendant received such notice. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289.
The defendant also complains that the trial judge failed to advise him of the time delays for taking an appeal as set forth in LSA-C.Cr.P. art. 914. Because the defendant filed a timely appeal, the trial court's failure to advise him of the prescriptive period for appeal is moot.

INEFFECTIVE ASSISTANCE OF COUNSEL
In this assigned error, the defendant argues that trial counsel was ineffective for failing to file a motion for reconsideration of sentence.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through an application for post conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). It is well settled, however, that where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La.1993); State v. Junior, 542 So.2d 23 (La.App. 5 Cir.1989), writ denied, 546 So.2d 1212 (La.1989). Since the record contains sufficient evidence to decide this issue, we will address the defendant's claim of ineffectiveness.
*1058 In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055. It is not enough for an accused to make allegations of ineffectiveness; the accused must couple these allegations with a specific showing of prejudice. State v. Morris, 98-236 (La.App. 5 Cir. 9/16/98), 719 So.2d 1076.
Since this court has, in fact, reviewed the defendant's claim of excessiveness of sentence, it cannot be said that the defendant showed prejudice as a result of counsel's failure to file a motion to reconsider sentence. Accordingly, this issue lacks merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals no errors which require corrective action.
For the reasons set forth herein, we affirm the defendant's conviction and sentence and remand the case to the trial court for further action in accordance with this opinion.
AFFIRMED AND REMANDED.
NOTES
[1] Moreover, the defendant has not shown prejudice since neither Sandra Brehm nor Bertrand Fos served on the jury because the defendant exercised peremptory challenges to remove them.
[2] Rape is defined in LSA-R.S. 14:41(A) as "the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent."
[3] As part of this assignment, the defendant argues that the verdict should be overturned because his case is factually similar to State v. Parish, supra, where the Louisiana Supreme Court reduced an attempted aggravated rape to a forcible rape. However, the facts in Parish are clearly distinguishable from the instant case. In Parish, the victim was released substantially unharmed and the defendant abandoned his attempt for no other reason than a change of mind. The defendant in Parish did not "fondle the victim or subject her to any sexual indignity." However, in the instant case, the victim was harmed, suffering vaginal hematomas and a bite on the neck along with various bruises. In addition, the defendant, in the instant case, attacked the victim, wrestled her to the ground, attempted to sexually penetrate her, and only abandoned his attempt because of the physical resistance from the victim. Clearly, the facts in this case are distinguishable from those in Parish.