900 So.2d 846 (2005)
STATE of Louisiana
v.
David THURSTON.
No. 04-KA-937.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
*847 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Assistant District Attorneys, Twenty-Fourth Judicial District, Gretna, Louisiana, for Plaintiff/Appellee.
Prentice L. White, Louisiana Appellate Project, Baton Rouge, Louisiana, for Defendant/Appellant.
*848 Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
The defendant has appealed his conviction of attempted aggravated rape and the twenty-five-year sentence imposed. For the reasons that follow, we affirm.

FACTS:
Flint Waters testified that in the spring of 2002, he was a state agent for Wyoming, working on the Department of Justice's Eye Tech Task Force conducting undercover sting operations on the internet. His job consisted of placing himself on the internet, via the chat rooms, posing as a child or a person with access to children and waiting for individuals who are soliciting contact with children to contact him. He explained that in the present case, he created an online profile of a mother with a nine-year-old daughter and used the screen name of "momofone82009."
In March 2002, in a chat room called "Perten," Agent Waters came into contact with a person using the identity of "thelolitamaster," who was later identified as defendant. The defendant initiated the contact. Agent Waters testified that "Perten" is a known chat room for individuals soliciting sex with or pornography of preteen children. He also explained that "lolita" is a term frequently used in chat rooms and pertains to sex with under-aged girls and "master" indicates a slave-and-master relationship that usually involves bondage and forced sex acts.
On March 19, 2002, defendant requested a private chat[1] with "momofone82009." Agent Waters testified that he responded and within the first three minutes of the private chat, defendant inquired about sex with the nine-year-old daughter. Defendant stated he was interested in forcing sex on the nine-year-old and beating her. He asked whether "momofone82009" would allow him to marry her nine-year-old daughter so he could "legally have sex with her." Defendant explained that he was looking for a family, mother and daughter to "master". He wanted to force them to rape each other with things and beat them. Defendant stated that he would home school the girl to be able to "have his way with her." By the end of the chat, defendant asked "momofone82009" to come get him from New Orleans and move him to Wyoming where she lived.
Over the next two to three weeks, six more chats were conducted between Agent Waters, under the identity of "momofone82009" also known as "Sandy," and defendant, the "lolitamaster". All the chats were recorded and some were video captured. Throughout the chats, defendant repeatedly referred to raping the nine-year-old, orally, vaginally and anally, and consistently talked of gagging and beating her. "Sandy" asked the defendant if this were fantasy or if he actually wanted to do this. Defendant replied that he wanted to do this. When asked if he had done this before, defendant replied that he had previously had sex with an eleven-year-old and had raped a sixteen-year-old. Defendant gave his phone number to "Sandy" and asked that she call him. Agent Waters explained that he had a female undercover officer call the defendant on two or three occasions. At one point in the online chats, defendant stated that he was afraid "Sandy" was an "fbi agent in on a sting or a cop." "Sandy" replied "maybe we shouldn't talk anymore. . . we should just let it go." At which point defendant replied: "no, no, no, I want this and so do you". Defendant sent *849 "Sandy" his Louisiana identification card so she could see that he really was who he stated he was.
Defendant also stated he had many pictures of naked young girls. He forwarded "Sandy" links to various websites that posted the pictures, including an invitation only website he created. The pictures reflected young girls and boys, fully or partially nude, either in sexual positions or engaged in sexual acts. Agent Waters testified he confirmed at least two-thirds of the pictures involved actual children.
During their chats, defendant and "Sandy" arranged to meet at the New Orleans International Airport on April 8, 2002. Defendant instructed "Sandy" to bring her nine-year-old daughter with her and he repeatedly and graphically described how he planned to rape her. Defendant instructed "Sandy" how to dress the child and explained that he would remove the child's panties when they left the airport and got into the rental car. He described various sex acts he would perform on the child and force the child to perform on him during the drive back to Wyoming.
In early April 2002, Agent Waters contacted Detective Michael Cummings with the Jefferson Parish Sheriff's Office (JPSO) and advised him of his investigation. The New Orleans Police Department (NOPD) agreed to provide an undercover female agent to pose as "Sandy" and the JPSO agreed to provide surveillance for the airport meeting.
On April 8, 2002, defendant arrived at the airport to meet "Sandy." Catherine Beckett, a NOPD detective, posed as "Sandy" and approached defendant after exiting an arrival gate in the airport. She asked if he was "Chuckie,"[2] to which he affirmatively replied, and he asked if she was "Sandy." Defendant then asked where "the little one" was and "Sandy" stated she was in the bathroom. Detective Beckett testified that defendant initially looked upset when he did not see the child, but became relaxed when she advised that the child was in the bathroom. Defendant was immediately arrested.
Defendant waived his Miranda rights and gave a statement wherein he admitted his intentions of raping the nine-year-old girl. At the time of his statement, defendant still believed the nine-year-old girl existed. He specifically admitted the only thing that prevented him from raping "Sandy's" nine-year-old daughter was being arrested at the airport. A subsequent search of defendant's home yielded a computer on which child pornographic images were stored.
At the conclusion of trial, defendant was found guilty of possession of pornography involving juveniles and attempted aggravated rape. He was sentenced to ten years for the pornography and twenty-five years for the attempted aggravated rape. The sentences are to run concurrently. Defendant has not appealed the pornography conviction or sentence. This appeal only relates to the aggravated rape conviction and resulting twenty-five-year sentence.

ASSIGNMENT OF ERROR NUMBER ONE
In his first Assignment of Error, the defendant argues that his Motion to Quash count two of the Bill of Information should have been granted because there was no victim and because the evidence included in the record clearly showed that the defendant was arrested without having seen, touched, or sexually assaulted this unknown fictitious nine-year-old alleged victim. Defendant claims there can *850 be no crime without a victim and contends the crime of attempted aggravated rape of a fictitious victim does not exist. He also maintains his activities were merely preparatory and, thus, were insufficient to constitute an attempt of the charged offense. The State responds it is immaterial whether the nine-year-old victim existed because defendant believed she existed and he intended to rape her and actually took steps toward accomplishing his goal.
Prior to trial, defendant filed a Motion to Quash on the basis an attempted rape could not be committed on an imaginary victim.[3] At the motion hearing, defendant argued there never could have been an attempted rape because the victim was non-existent. Defendant also argued there could be no attempted rape because defendant's actions were merely preparatory and did not constitute an overt act tending toward the commission of the crime. The trial court took the matter under advisement and ultimately denied the Motion to Quash.
LSA-C.Cr.P. art. 531 provides that "[a]ll pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of `not guilty' and `not guilty by reason of insanity,' shall be urged by a motion to quash." LSA-C.Cr.P. art. 532 lists the general grounds for a Motion to Quash. It provides in pertinent part that a Motion to Quash may be based on the ground that "[t]he indictment fails to charge an offense which is punishable under a valid statute." LSA-C.Cr.P. art. 532(1).
The issue presented, whether a defendant can be charged with the attempted aggravated rape of a fictitious victim, appears to be a de novo issue in Louisiana. In State v. Robins, 253 Wis.2d 298, 646 N.W.2d 287 (6/21/02), cert. denied, 537 U.S. 1003, 123 S.Ct. 502, 154 L.Ed.2d 400 (2002), the Wisconsin Supreme Court addressed a very similar issue, but under the context of Wisconsin's child enticement statute.[4] The issue was whether the child enticement statute was violated when an adult government agent was posing online as a child and there was no actual child victim.[5]
Robins involved a factual scenario very similar to the present case. In Robins, a Department of Justice agent was posing online as a thirteen-year-old boy when he was contacted by defendant in an internet chat room. The initial and subsequent online chats centered on explicit sexual matters and involved defendant forwarding sexual photos to the "13-year-old boy" via *851 e-mail. The two arranged to meet for the purpose of having sex. When defendant arrived at the arranged location, he was arrested. Defendant gave a statement wherein he admitted having sexually explicit conversations with the "13-year-old boy" and that he had set up the meeting for the purpose of having sex with him.
Defendant was convicted of attempted child enticement. He appealed and argued, among other things, that the crime of child enticement was legally impossible because there was no actual child victim. The Wisconsin Supreme Court found that the lack of an actual child victim did not render the charge non-existent. The court relied on Wisconsin's attempt statute, which defines "attempt" as follows:
An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that the actor does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that the actor formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.
Wis. Stat. § 939.32(3). The court held that a fictitious victim was the extraneous factor that intervened to prevent the completion of the crime of child enticement. As such, the court upheld defendant's conviction for attempted child enticement.
Our attempt statute is somewhat different from Wisconsin's. LSA-R.S. 14:27 defines attempt as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
Similar to Wisconsin's attempt statute, it is the intent to commit the crime that constitutes an attempt, not the possibility of success.
The Reporter's Comment following the attempt statute states:
It is essential to an attempt that there be a specific intent to commit the crime. The test appears to be  would defendant have been guilty of a crime if his intention had been fully consummated?....
This section adopts the Canadian view that it is immaterial whether there is an actual possibility of committing the intended offense. An attempted homicide may fail because the gun used is defective or the poison used is not sufficiently deadly. An attempted rape may fail because the perpetrator is impotent ... Where such conditions preventing the consummation of the crime are unknown to the offender, they do not prevent his being liable for an attempt. The essential elements are an actual specific intent to commit the offense, and an overt act directed toward that end. The subjective mental element is all-important in this offense. Of course, it will be impossible to entertain a specific intent to commit an offense unless the offender has an apparent (to him) ability to consummate the crime.
A fictitious victim simply prevents the actual possibility of committing *852 the crime, which is immaterial to the crime of attempt. As contemplated by the statute and explained by the comments, a defendant can be liable for an attempt when he is unaware of the circumstances that prevent the crime from being consummated. That circumstance, in the present case, is the fact the victim was fictitious. The record clearly shows defendant believed the nine-year-old girl existed. Thus, he was unaware he could not actually commit the intended rape.[6] As such, the fact the victim was fictitious is not fatal to the attempted aggravated rape charge against defendant in this case.
The facts in State v. Peterman, 95 P.3d 1042, 2004 WL 1878301 (Kan. App.12/15/04), are also similar to the facts of the case at bar. In Peterman, the defendant met a woman, Davis, at a bar and told her he was interested in making money by placing photographs of nude girls under the age of twelve on the internet. He asked Davis if she would assist him in finding such females and that they could take pictures of each other having sex with the girls. Defendant later called Davis and asked if she could find a girl that night. Davis stated that she was at a birthday party for a little girl and she could bring that girl to a hotel later that night. Davis contacted the police and told them that defendant was coming to meet her, but that she did not have a girl. Defendant then went to Davis' location and Davis told him she could not take the child from the party, it would have to be later. Defendant stated he would leave and get a hotel room; he would then contact Davis with the location so she could bring the child there. Defendant was arrested before he left Davis and charged with attempted rape. At trial, defendant claimed that his acts were preparatory to the commission of a rape and that he did nothing that could be characterized as constituting an overt act toward actual commission of the completed offense. The Court noted that the line between preparation and overt act is indistinct and highly depended on the facts. In reversing the attempted rape conviction, the Court found "where there is not yet a victim or a place and time established for the sexual intercourse, we conclude that the line has not been crossed."
The evidence presented in this case shows that the defendant did cross the line between mere preparation and an overt act towards the commission of the crime. In this case, the defendant planned a specific time and place to meet "Sandy" and her nine-year-old daughter. In the online chats defendant repeatedly stated that he would begin to perform sex acts on the child and force the child to perform sex acts on him as soon as they got into a rental van upon leaving the airport. In his statement to police, the defendant stated that the only thing that stopped him from having sex with the child was "being booked at the airport."
Furthermore, we find defendant's argument that his acts were merely preparatory and were not sufficient to constitute an overt act tending toward accomplishing the crime as required by the attempt statute pertains to the merits of the case and is not proper in a Motion to Quash. A Motion to Quash is, essentially, a mechanism whereby pre-trial pleas that do not go to the merits of the charge are urged. At a hearing on such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. State v. Moten, 99-552 (La.App. 5 Cir. 11/30/99), *853 748 So.2d 1210, 1211. A court considering a Motion to Quash must accept as true the facts contained in the Bill of Information and in the bill of particulars, and determine as a matter of law from the face of the pleadings whether a crime has been charged. While evidence may be adduced on the Motion to Quash, such evidence may not include a defense on the merits. State v. Stewart, 01-1041 (La.App. 5 Cir. 2/26/02), 811 So.2d 991, 993.
Whether defendant's actions constituted more than mere preparation to commit a crime sufficient for attempt is a factual question for the trier of fact. Therefore, the trial court properly denied defendant's Motion to Quash.

ASSIGNMENT OF ERROR NUMBER TWO:
In his second Assignment of Error, the defendant contends that his twenty-five-year sentence was extremely excessive because the defendant had not been engaged in any illegal activity at the time of his arrest and he did not have a minor in his custody when the police approached him at the airport. Defendant argues his twenty-five-year sentence for attempted aggravated rape is excessive considering sentences imposed on defendants who actually raped a child. He contends his actions, which did not involve any sexual activity or physical contact, warranted a lighter sentence.
Defendant was convicted of attempted aggravated rape, which carries a sentence of not less than ten and not more than fifty years without the benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:27 and 14:42. He received a mid-range sentence of twenty-five years. Defendant immediately objected to his sentence on the basis it was excessive.
Both the United States and the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340.
The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. Id.
In imposing the twenty-five-year sentence, the trial court stated its reasons as follows:
... the jury also found you guilty of attempted aggravated rape, in my opinion there was plenty evidence to support that. I saw no indication of remorse.
I listened carefully to both the testimony and read the exhibits which were *854 introduced by the State which involved in part a series of conversations that you had on the internet, and all of those exhibits provided a transcript of what you said in writing, which indicated your intent to do truly despicable things to a nine year old child, and calling them despicable is really actually a euphemistic, it was worse than despicable. Furthermore, I recall in fairly good detail the statement that you gave to detectives after your arrest which again was absolutely remorseless. It appears that you are a pedophile which causes me a great deal of concern because all scientific or all clinical evidence seems to indicate or empirical evidence seems to indicate that that condition does not get cured or go away at least. It doesn't very easily but considering what you tried to do, considering what you said you were going to do, and considering what you said after you were caught doing it, I feel that you are an enormous threat to society.
There are no Louisiana cases discussing the excessiveness of a sentence where the victim was fictitious. Defendant contends his sentence is similar to those defendants whose actions were far worse than his and involved actual sexual contact with the victims. He argues because he never engaged in sexual contact with a minor, his sentence for attempted aggravated rape should be less.
Defendant is correct in his statement that there are cases where the defendants have received a twenty-five-year sentence for attempted aggravated rape of a child and the facts show the defendants actually succeeded in their sexual activities with the child. See, State v. King, 96-1303 (La.App. 3 Cir. 4/2/97), 692 So.2d 1296, where the Third Circuit upheld a twenty-five-year sentence for a defendant convicted of attempted aggravated rape of his eight-year-old stepdaughter where there was actual vaginal and oral intercourse. There are also cases where such defendants received far more than twenty-five years. See, State v. Murphy, 34,624 (La.App. 2 Cir. 4/6/01), 785 So.2d 197, writ denied, 01-1259 (La.3/22/02), 811 So.2d 920, where the Second Circuit upheld defendant's maximum fifty-year sentence for attempted aggravated rape where defendant had vaginal intercourse with an eleven-year-old victim. The jurisprudence reveals a vast range of sentences for attempted aggravated rape.[7]
The mere fact defendant was prohibited from physical contact because the victim was fictitious does not make his crime any less heinous. He was convicted of attempt, which punishes the intent of the defendant. The graphic details of the multiple sex acts defendant intended to do and the beatings he intended to deliver to a bound and gagged little girl are what shock the conscience, not his twenty-five-year sentence. Thus, we do not find the defendant's sentence to be excessive.

ERROR PATENT DISCUSSION:
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); *855 and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990).
First, defendant was not advised of the prescriptive period for filing post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8. Accordingly, this matter is remanded to the trial court and the trial court is instructed to inform defendant of the two-year prescriptive period by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received said notice.
Secondly, it is noted that defendant was convicted of attempted aggravated rape of a victim under the age of twelve. Attempted aggravated rape is defined as sex offenses by LSA-R.S. 15:541(14.1). LSA-R.S. 15:540, et seq. requires registration of sex offenders. Further, LSA-R.S. 15:543(A) requires the court to notify a defendant of sex offender registration requirements as follows: "The court shall provide written notification to any defendant charged with a sex offense of the registration requirements of R.S. 15:542. Such notice shall be included on any guilty plea forms and judgment and sentence forms provided to the defendant." On remand the trial court is ordered to inform a defendant of the registration requirements as provided in LSA-R.S. 15:543(A), by sending appropriate written notice to the defendant, within ten days of this Court's opinion, and to file written proof in the record that the defendant received the notice. See, State v. Stevenson, 00-1296 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165, 1166-1167.

CONCLUSION:
For the foregoing reasons, the defendant's conviction of aggravated rape and twenty-five-year sentence are affirmed. This matter is remanded to the trial court for the limited purpose of sending the defendant written notification of the time period for seeking post conviction relief and registration requirements of the sex offender.
CONVICTION AND SENTENCE AFFIRMED; MATTER REMANDED
NOTES
[1] The full content of every "chat" was printed and placed into evidence.
[2] During several of the chats, defendant stated his nickname was "Chuckie."
[3] Defendant filed several Motions to Quash, all of which were denied. The only ruling he challenges on appeal is the denial of his September 28, 2002 Motion to Quash, which was based on the argument that a crime cannot be committed on a fictitious victim.
[4] Wisconsin's child enticement statute is as follows:

948.07 Child enticement. Whoever, with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class BC felony:
(1) Having sexual contact or sexual intercourse with the child in violation of s. 948.01 or s. 948.095.
(2) Causing the child to engage in prostitution.
(3) Exposing a sex organ to the child or causing the child to expose a sex organ in violation of 948.10.
(4) Taking a picture or making an audio recording of the child engaging in sexually explicit conduct.
(5) Causing bodily or mental harm to the child.
(6) Giving or selling to the child a controlled substance or controlled substance analog in violation of Ch. 961.
[5] The issue was raised by the defendant at the trial court level through various motions to dismiss.
[6] Aggravated rape is defined as anal, oral or vaginal sexual intercourse where the victim is under the age of thirteen. LSA-R.S. 14:42(A)(4).
[7] In some cases, similar twenty-five-year sentences were imposed where the victim was an adult, as opposed to a child, which seemingly renders the crime more reprehensible. See, State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340, where this Court found defendant's twenty-five-year sentence for attempted aggravated rape of a woman not to be excessive where the victim was thrown to the ground and sustained bruising; and, State v. Elzy, 451 So.2d 1167 (La.App. 4 Cir.1984), where the Fourth Circuit found a twenty-five-year sentence for an attempted aggravated rape conviction not to be excessive where the adult victim was cut with a knife during the attack.