BROWN, Chief Judge.
 

 !, Defendant, James Clyde Prine, Jr., was charged with computer-aided solicitation of a minor that occurred on February 19, 2007, in violation of La. R.S. 14:81.3 and in
 
 *760
 
 a separate bill of information he was charged with attempted aggravated rape of a female whom defendant believed to be 11 years old, in violation of La. R.S. 14:27 and La. R.S. 14:42. These offenses were joined and tried together. On October 10, 2007, a jury found defendant guilty of both charges.
 

 On February 26, 2008, defendant was sentenced to 20 years imprisonment at hard labor for the attempted aggravated rape conviction, and 5 years imprisonment at hard labor for the computer-aided solicitation of a minor with the terms to run consecutively and be served without benefit of parole, probation, or suspension of sentence. This appeal assigns as error defendant’s conviction of attempted aggravated rape and the 5-year sentence on the computer-aided solicitation charge. We affirm.
 

 Facts
 

 Defendant was charged and convicted on the basis of online communications with undercover officers who were posing as a 14-year-old female and a 28-year-old female with an 11-year-old daughter, respectively. The Internet Crimes Against Children Task Force attempts to locate sexual predators online by having special agents pose as minor children online who wait to be contacted by an adult soliciting sex.
 

 The agent sets up a profile which contains information about the fictitious child such as age, school, and hobbies, and other miscellaneous personal information. After the profile is prepared, the undercover agent | gwill enter a regional chat room. After entering the chat room with the fictitious profile, the agent “just sits and waits.” Other online viewers are able to access the fictitious profile and may then choose to communicate by instant messaging; these communications are private and viewable only by the sending and receiving parties. The chat rooms, which are administered by Yahoo, are not solely adult chat rooms since Yahoo does not require age verification. As a result, minors may easily access those chat rooms by entering a fictitious age.
 

 Computer-aided Solicitation of a Minor
 

 On February 19, 2007, a detective with the Webster Parish Sheriffs Office was working with the attorney general’s task force under the screen name “Lil Bossier Hottie.” The officer told defendant that he was a 14-year-old female high school student from Bossier.
 

 Defendant asked whether “she” (fictitious 14-year-old girl) had ever been with an older man before. The officer said yes; defendant said “wow,” then asked for a picture which was not sent; however, defendant’s photo showed up in the chat dialog as the two were communicating. The officer asked what defendant liked to do for fun; defendant responded, “[s]ex.”
 

 Defendant then asked if “[m]om and dad keep a close eye on you?” The officer responded, “[djon’t have a dad ... [m]om at work and she is pretty cool.” Defendant asked about the pill, whether “[m]om comes home late,” and if “[tjoday [is] one of those days?”
 

 Defendant also asked a series of questions involving sexual role play. Defendant described such role play:
 

 | a Like leave your door open and get in bed like you’re asleep. I am the intruder or burglar and I molest you and rape you or I am the cable repair guy and you are like wearing nothing around the house and I take you ... no pain or hurt, just play.
 

 Defendant then asked, “How big are your tits, baby?” Defendant continued to ask a series of questions before asking, “Do you want to do this or what?” and stating:
 

 
 *761
 
 If you do the in-bed thing I can put a pillow over your head and act like you’re knocked out and then I can start working on you, or if we do the cable guy I can play like I chloroform you and you play like you pass out ... [o]r we can just jump into bed.
 

 Defendant described what he wanted the girl to wear, and then asked, “This sisn’t [szc ] going to cost me a prison terms
 
 [sic
 
 ] is it?” Two minutes later, defendant stated, “Leave door open ‘cause if you’re in shower that will be good, too, okay ... But if I come in and you’re in bathroom I can just chloroform you ... You can struggle.” The officer responded, “Bring tape or something.”
 
 [1]
 

 Defendant said he would not hurt the girl, stating that “I am taking a huge chance doing this with a 14-year-old so I ain’t gonna f*ck nuttin up.” The two discussed protection (i.e., prophylactics); defendant stated that he would wear a condom. Defendant discussed where to meet and said that he would rather meet at the girl’s home, because there was “too much law enforcement around motels.” The two finally agreed to meet at a gas | ¿station. When the officer asked, “[wjhere are we going,” defendant responded, “[to a] [m]o-tel to f*ck your brains out.”
 

 Defendant did not go to the arranged location, but went first to the location concerning the rape charge. The officer went to the scene of defendant’s arrest and testified that he believed that defendant had intended to meet the teenaged girl because “the act was furthered by him coming and meeting one of the other arranged meets that same day ... and he also brought two rolls of tape ... which I asked him to bring tape in our chat session.”
 

 Attempted Aggravated Rape
 

 On February 19, 2007, another agent entered a Louisiana adult chat room under a profile which described him as a 28-year-old single mother with an 11-year-old daughter. The undercover profile screen name was “Single mom for love 1978.” The name listed on the profile was “Brooke.” The agent received an instant message from defendant.
 

 The agent asked defendant if the fact that she had an 11-year-old daughter was okay with defendant, who responded that it was. Defendant then asked, “do you fool around at all or are you ... totally looking for some kind of relationship Brooke?” The officer wrote, “[f|ool around is fine. Jess [the 11-year-old] is always there though.”
 

 Defendant asked, “[s]he doesn’t walk in does she, LOL (which means ‘laugh out loud’)?” Defendant asked, “[w]hat if she did?” to which the agent responded with a smiling emoticon (an online mode of expressing | Kemotion) and said that it would be all right. Defendant then asked, “Do you want to teach her?”
 

 Defendant then continued, asking whether “if we fooled around could she, the 11-year-old, be included.” The agent said yes and defendant then inquired whether the girl was a virgin and asked for pictures. The agent said, “yes, right now,” and sent defendant a picture of the fictitious 11-year-old (“Jess”); the picture was actually of a woman who is now a Shreveport detective, when the detective had been between 10 and 13 years old. Defendant responded that Jess was beautiful and then asked, “[w]hen would you like to do this?”
 

 
 *762
 
 The conversation continued and defendant said, “Well, we go to do Jess ... we going to do Jessica, too?” As to being gentle, defendant responded that he would and that he did not have to have sexual intercourse with Jess, he could just touch her. Defendant asked whether Jess’s breasts had developed yet and acted disappointed when told, “barely.” Defendant also asked, “[w]ill you work her over or just me?”
 

 The agent had told defendant that “she” lived in Brownlee Estates. Defendant later stated, “I think we should meet at your home. You can come outside and then we can decide, okay? Then if we like each other ... we’re already there, okay?” The agent told defendant that the store at the corner of Airline Drive and Brownlee Road, which was the meeting place they had discussed earlier, would be a preferable meeting place.
 

 Defendant made more sexual comments, such as “[ejleven is very young but she will have parental permission; LOL.” Defendant then asked, |fi“You need your brains f*cked out? You a multiple orgasm woman?” Defendant stated, “I would love to f*ck you till you passed out ... [a]nd when you came to I would be f*ck*ng Jessica.” Defendant also stated, “[hjell even if you didn’t pass out you could act like it ... then come to as I worked her over.” Defendant also stated that “[i]f she is in there before you pass out that is good. I want her to see her mom totally f*ck*d and out like a light.”
 

 Defendant discussed arrangements to meet. Jess was not to be present at the meeting. The agent admitted that there had been no contemplation of sex at the meeting place, stating that, “During the beginning of our conversation I indicated that I was at work and that Jessica was at home by herself and that we were going to meet somewhere besides my house[.]”
 

 Defendant stated that “[w]e can meet there ... [ejither of us can say no to this and we can still be friends, okay?” Defendant stated, “I have condoms for Jessica.”
 

 The conversation between the agent and defendant lasted from 11:27 a.m. until 1:07 p.m. on February 19, 2007. The conversation between defendant and the first officer began at 11:48 a.m., also on February 19, 2007.
 

 The agent went to meet defendant at the agreed-upon location and brought an officer from the Bossier City Marshal’s Office because she fit the profile he had been using (a 28-year-old blonde female). Also, Detective Scotty Tucker came with the agent.
 

 17Th.e agent and officers waited in the parking lot until they saw a car which matched defendant’s description of the vehicle that he would be driving (a black Crown Victoria). The agent and Detective Tucker “leaned back” in the vehicle when they saw defendant’s car pull in. Defendant pulled up along the driver’s side and “kind of waved” at the female officer. As defendant exited the vehicle, Detective Tucker took defendant into custody.
 

 Detective Tucker testified at trial that as he was advising defendant of his rights, defendant said something like, “I knew better. I have a wife at home with MS and I have a mildly mentally handicapped daughter and I knew better than this.” Tucker again advised defendant of his
 
 Miranda
 
 rights at the police station. Defendant admitted to having conducted the two online chats and setting up meetings with both online profiles. However, he related that he did not show up to meet the first officer because “something wasn’t right” with that one.
 

 Officers recovered a box in the trunk of defendant’s vehicle. The box was not sealed and contained several rolls of tape,
 
 *763
 
 handcuffs and keys, rope, two razor blades, two box cutters, gloves, pens, and a battery. The officers also found a mask, zip ties, medical tape, a flashlight, condoms, towels, and a pistol in the trunk of defendant’s vehicle. When the officers found the rope, tape, handcuffs, and gun, defendant stated that he used those items on a girl that he knew who was a schoolteacher but that “there’s no |skids involved[.]”
 
 [2]
 
 Later, defendant’s computer was seized, as well as some CDs, a cassette recorder and cassettes, and a roll of film.
 

 On April 18, 2007, defendant was charged with computer-aided solicitation of a minor in violation of La. R.S. 14:81.3. On April 19, 2007, defendant was charged by bill of information with attempted aggravated rape of a female whom defendant believed to be 11 years old, by arranging a meeting through textual communications, in violation of La. R.S. 14:27 and La. R.S. 14:42. These offenses were joined and tried together. On October 10, 2007, after a trial by jury, defendant was found guilty of both charges.
 

 On February 26, 2008, defendant was sentenced to 20 years of imprisonment at hard labor for the attempted aggravated rape and 5 years of imprisonment at hard labor for computer-aided solicitation of a minor. The court imposed consecutive terms for the 20-year and 5-year sentences and ordered that they should be served without benefit of parole, probation, or suspension of sentence. This appeal followed.
 

 Discussion
 

 Sufficiency of the Evidence
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 |9 State v. Tate,
 
 01-1658 (La.05/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Cummings,
 
 95-1377 (La.02/28/96), 668 So.2d 1132;
 
 State v. Murray,
 
 36,137 (La.App. 2d Cir.08/29/02), 827 So.2d 488,
 
 writ denied,
 
 02-2634 (La.09/05/03), 852 So.2d 1020.
 

 An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987);
 
 State v. Adkins,
 
 39,724 (La.App. 2d Cir.06/29/05), 907 So.2d 232,
 
 writ denied,
 
 06-2514 (La.05/04/07), 956 So.2d 607;
 
 State v. Lott,
 
 535 So.2d 963 (La.App. 2d Cir.1988).
 

 Attempted Aggravated Rape
 

 Rape is defined as the act of anal, oral or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent. La. R.S. 14:41. Aggravated rape is when the victim is under the age of thirteen years. La. R.S. 14:42.
 

 La. R.S. 14:27 provides in pertinent part that:
 

 A. Any person who, having a specific intent to commit a crime, does or omits
 
 *764
 
 an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
 

 |inB. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
 

 Attempt requires both the specific intent to commit a crime and an act for the purpose of, or an “overt act,” tending directly toward accomplishment of that crime.
 
 Id.; State v. Caston,
 
 43,565 (La.App. 2d Cir.09/24/08), 996 So.2d 480;
 
 State v. Hunter,
 
 454 So.2d 131 (La.App. 2d Cir.1984),
 
 writ denied,
 
 456 So.2d 1018 (La.1984). Specific intent to commit a crime is an element of an attempted offense. The state has the burden of proving defendant’s specific intent to commit the charged crime.
 
 Id.
 
 Conviction of an attempted offense must rest upon sufficient proof that the offender actively desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object.
 
 State v. Browhow,
 
 41,686 (La.App. 2d Cir.12/13/06), 945 So.2d 890.
 

 The delineation between mere preparation and an overt act has not been precisely defined. The state supreme court has explained that a defendant’s actions which are “mere preparation” and those which may be identified as acts “for the purpose of and tending directly toward” commission of a crime may be understood as existing on a continuum.
 
 State v. Ordodi
 
 06-0207 (La.11/29/06), |11 946 So.2d 654. The distinction between which of a defendant’s actions constitute an attempt, and which are mere preparation, is fact specific to each case; the trier of fact must determine where a defendant’s actions fall on the continuum.
 
 Id.
 

 An act need not be directly proximate to commission of a crime in order to be properly classified as an overt act.
 
 Id., citing State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442, 444;
 
 State v. Williams,
 
 490 So.2d 255, 260 (La.1986). Further, an overt act need not be such that it will result in commission of the crime unless frustrated by extraneous circumstances.
 
 State v. Ordodi, supra, citing State v. Porter,
 
 249 La. 784, 191 So.2d 498, 500 (1966).
 

 Louisiana’s attempt statute rejects factual impossibility as a defense, stating “it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.” La. R.S. 14:27.
 

 Defendant claims that when the victim is fictitious, as in this case, nothing more than mere preparation is possible. In a case that is factually similar to the case at bar, the Fifth Circuit affirmed a conviction of attempted aggravated rape.
 
 State v. Thurston,
 
 04-937 (La.App. 5th Cir.03/01/05), 900 So.2d 846,
 
 writs denied,
 
 05-1332, 05-1342 (La.01/09/06), 918 So.2d 1040, 1041. In that case, a state agent for Wyoming was working on the Department of Justice’s Eye Tech Task Force conducting undercover internet operations. Much as in the case
 
 sub judice,
 
 the agent posed as a mother of a nine-year-old daughter. Defendant entered a chat room with the agent, soliciting sex from the mother and the nine-year-old | ^daughter. Over a two or three-week period of time, defendant conducted seven chats with the agent.
 
 *765
 
 During these chats, defendant repeatedly referred to raping the nine-year-old orally, vaginally and anally, and consistently spoke of gagging and beating the child. Defendant told the agent that he had previously had sex with an 11-year-old and had raped a 16-year-old. Defendant forwarded child pornography links to the agent, including an “invitation only” website that defendant had created.
 

 Defendant arranged to meet with the agent at the New Orleans International Airport. Defendant told the agent how to dress the child, explaining that once they left the airport he would remove the child’s panties, and described various sex acts that he would perform on the child or force the child to perform on him on the way back to Wyoming. The New Orleans Police Department arranged for one of its officers to pose as the fictitious mother. When defendant arrived at the airport, he asked the officer where the child was, and looked relieved when the officer informed him that the child was in the bathroom. Defendant was then arrested.
 

 The
 
 Thurston
 
 court noted that the issue of whether a defendant may be charged with attempted aggravated rape, in an instance where the victim does not actually exist, was a
 
 de novo
 
 issue in Louisiana. The court opined that Louisiana’s attempt statute punishes the intent of the actor, rather than the possibility of success.
 
 Id.
 
 at 851. Because the evidence showed that defendant believed that the nine-year-old girl existed, defendant was unaware that he could not commit the rape. The court subsequently found 113that the fact that the victim was fictitious was not fatal to the attempted aggravated rape charge against defendant.
 
 Id.
 
 at 852.
 

 In the context of the requirement of an overt act, the
 
 Thurston
 
 court found that:
 

 [t]he evidence presented in this case shows that the defendant did cross the line between mere preparation and an overt act towards the commission of the crime. In this case, the defendant planned a specific time and place to meet “Sandy” and her nine-year-old daughter. In the online chats defendant repeatedly stated that he would begin to perform sex acts on the child and force the child to perform sex acts on him as soon as they got into a rental van upon leaving the airport. In his statement to police, the defendant stated that the only thing that stopped him from having sex with the child was “being booked at the airport.”
 

 Id.
 

 In the instant case, a reasonable factfin-der could find that it was proven beyond a reasonable doubt that defendant had the specific intent to rape an 11-year-old child, based upon defendant’s electronic communications with the agent. Defendant’s own statements indicated a specific intent to have sexual intercourse with the child. The defense’s argument that only mere preparation was possible because the contemplated victim was fictitious is an argument of factual impossibility and is vitiated by statute. Whether the evidence was sufficient to convict defendant of attempted aggravated rape therefore turns on whether defendant committed an overt act “tending directly toward” accomplishment of sexual intercourse with the fictitious child.
 

 Defendant had arranged to meet with the mother of the child at a convenience store. Defendant had stated that he would bring condoms for | uthe child; the police recovered condoms, as well as various other apparent accouterments (rope, tape, a gun, etc.), from defendant’s car. Whether these acts tended directly toward the consummation of the crime of aggravated rape or where they fell on the continuum (of mere preparation versus overt
 
 *766
 
 act) was a question of fact for the jury in this case. Viewing defendant’s action in the light most favorable to the prosecution, together with defendant’s statements made at the time of arrest (“I knew better”) a reasonable finder of fact could have concluded that defendant’s actions constituted an act for the purpose of and tending directly toward commission of aggravated rape.
 

 Further, the defense identifies a separation of powers issue. The defense points out that the legislature contemplated circumstances such as those giving rise to defendant’s charge, conviction, and sentence when it passed legislation governing computer-aided solicitation of minors.
 
 See
 
 La. R.S. 14:81.3. In this separate statutory section, the legislature specifically designates a lesser sentence for cases which no actual victim exists, but in which there is reasonably believed to be a child under the age of 18.
 

 The defense notes that in this case, the solicitation of a fictitious mother and a fictitious child for sexual activity has garnered a much more serious charge than direct solicitation of a fictitious minor. The defense concludes that allowing the conviction of attempted aggravated rape to stand in this case, where another statutory section governs, encroaches upon the exclusive power of the legislative branch of government.
 

 |1ñAt the time of the Fifth Circuit’s decision in
 
 State v. Thurston, supra,
 
 the state legislature had not yet enacted La. R.S. 14:81.3. This statutory section governs solicitations made through use of a computer or electronic device, discussed
 
 infra.
 

 Computer-aided Solicitation of a Minor
 

 La. R.S. 14:81.3, at the time of the offense, provided in pertinent part:
 
 [3]
 

 A. Computer-aided solicitation of a minor is committed when a person eighteen years of age or older knowingly contacts or communicates, through the use of electronic textual communication, with a person who has not yet attained the age of eighteen or a person reasonably believed to have not yet attained the age of eighteen, for the purpose of or with the intent to persuade, induce, entice, or coerce the person to engage or participate in sexual conduct ... or with the intent to engage or participate in sexual conduct in the presence of the person who has not yet attained the age of eighteen, or person reasonably believed to have not yet attained the age of eighteen.
 

 B. (1) Whoever violates the provisions of this Section shall be fined not more than ten thousand dollars and shall be imprisoned at hard labor for not less than two years nor more than ten years, without benefit of parole, probation, or suspension of sentence.
 

 [[Image here]]
 

 C. (3) It is not a defense to a prosecution brought pursuant to this Section, on the basis of consent or otherwise, that the person reasonably believed to be under the age of eighteen is actually a law enforcement officer or peace officer acting in his official capacity.
 

 I^The prosecution of this defendant for aggravated rape does not present a constitutional problem in the context of the doctrine of separation of powers. Because La. R.S. 14:81.3 applies to conversations occurring directly between a minor and a
 
 *767
 
 defendant, the statute does not apply. Defendant in this case believed he was speaking to the mother of the minor child. Therefore, defendant’s actions were criminal under the statutes governing attempted aggravated rape.
 

 Even if La. R.S. 14:81.3 did apply to the facts in this case (for instance, if defendant had believed that he was speaking directly with the eleven-year-old girl) the district attorney would have retained discretion to prosecute defendant for attempted aggravated rape. When conduct is criminalized by more than one statute, the district attorney retains discretion to choose which of the applicable statutory sections to apply when prosecuting a defendant.
 
 See
 
 La. R.S. 14:4. This defendant’s conviction and sentence therefore do not present a problem of separation of powers.
 

 Excessive Sentence
 

 According to defendant, the court did not take mitigating factors into account when imposing a sentence of five years imprisonment at hard labor for the computer-aided solicitation of a minor.
 
 [4]
 
 The defense notes that defendant did not have a criminal history, and that defendant was Irresponsible for caring for his disabled wife and daughter. Because the maximum sentence allowed for this crime is ten years, the defense urges that a sentence of five years is excessive.
 

 According to the state, given the graphic details of defendant’s intentions, the five-year sentence does not shock the conscience and is therefore not excessive.
 

 A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 01-2574 (La.01/14/08), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 01-0467 (La.01/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App. 2d Cir.01/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App. 2d Cir.04/02/97), 691 So.2d 864.
 

 Although the record does not reflect that defendant filed a motion to reconsider sentence, this court will consider defendant’s five-year sentence for constitutional excessiveness.
 
 See State v. Lathan,
 
 41,855 (La.App. 2d Cir.02/28/07), 953 So.2d 890,
 
 writ denied,
 
 07-0805 (La.03/28/08), 978 So.2d 297. The record shows that the trial court took cognizance of mitigating factors when imposing sentence. Additionally, a mid-range |1ssentence of five years is not grossly disproportionate to the crime of solicitation of a minor, and it does not shock the sense of justice.
 

 Conclusion
 

 For the foregoing reasons, defendant’s convictions and sentences are AFFIRMED.
 

 STEWART, J., concurs.
 

 [1]
 

 . At trial, he explained his reason for asking defendant to bring tape: “[DJuring these investigations we typically try to get them to bring an object with them that’s made-that we have made reference to in the chat strictly for evidence purposes and to show that ... they were intending to come and they did bring the objects[.]”
 

 [2]
 

 . Several pictures were also recovered from the vehicle. The pictures were admitted into evidence at trial; the state stipulated that none of the recovered pictures contained anything sexual in nature.
 

 [3]
 

 . The law was amended by Acts 2008, No. 25, § 1, eff. May 30, 2008; Acts 2008 No. 461, § 1, eff. June 25, 2008; Acts 2008, No. 646, O 2 NJ O O -d § ho O o iH <N
 

 [4]
 

 . Defendant did not include an assignment of error regarding his 20-year sentence for attempted aggravated rape. Therefore, that portion of his sentence will not be reviewed for constitutional excessiveness. La.C.Cr.P. art. 920 provides that the only matters which shall be considered on appeal are an error designated in the assignment of errors and an error that is discoverable by a mere inspection of the pleadings and proceedings without an inspection of the evidence. Excessiveness of sentence is not an error patent.
 
 State v. Rogers,
 
 03-1203 (La. 11/14/03), 862 So.2d 963;
 
 State v. Johnson,
 
 96-3041 (La.03/04/98), 709 So.2d 679.