# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1440

STATE OF LOUISIANA

VERSUS

ARTHUR BIAS, JR.

************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 10-1
HONORABLE GERARD B. WATTIGNY, JR., DISTRICT JUDGE

************

## PHYLLIS M. KEATY
## JUDGE

************

Court composed of Jimmie C. Peters, Marc T. Amy, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

J. Phil Haney
District Attorney
Walter J. Senette, Jr.
Assistant District Attorney
16th Judicial District Court
St. Mary Parish Courthouse
Franklin, Louisiana 70538
(337) 828-4100
Counsel for:
    State of Louisiana

Annette Roach
Louisiana Appellate Project
Post Office Box 1747
Lake Charles, Louisiana 70602-1747
(337) 436-2900
Counsel for Defendant/Appellant:
    Arthur Bias, Jr.

**KEATY, Judge.**

This is an appeal from an adjudication convicting Defendant of three crimes and sentencing him accordingly. Two questions are presented for our review. We are called upon to determine, first, whether Defendant's waiver of his right to a jury trial was valid; and second, through three assignments of error, whether Defendant's convictions, adjudication, and sentences should be affirmed. For the following reasons, we find that Defendant's waiver of his right to jury trial was valid, and we affirm his convictions, adjudication, and sentences.

## FACTS

At about 7:00 p.m. on November 1, 2009, Ryan Gary (Gary) was waiting for his cousin to pick him up near a convenience store in Iberia Parish. Defendant, Arthur Bias, Jr., whom Gary had met before, approached and told Gary to follow him to the side of the building. Once there, Defendant grabbed Gary by his jacket, slammed him against a nearby fence, and told him to empty his pockets. Gary complied, handing Defendant his cell phone. Defendant then demanded Gary's jacket, shorts, and shoes. Gary surrendered his shorts to Defendant, but saw a chance to escape and did so before relinquishing any other items of clothing.

From a nearby parking lot, Gary saw Defendant put the shorts into his car and enter the convenience store. He then saw fighting take place in the store.

When Defendant entered the store, he approached the counter and asked for Seagram's gin. The cashier, Yaser Obid, presented a bottle of gin and said to Defendant, "four thirty-three." Defendant searched his pockets, and when it appeared he would produce no money, Yaser spoke Arabic to his brother, Ahmad Obid, advising him to station himself near the door in case Defendant stole the gin.

1

Defendant pulled out a firearm and shook it at Yaser. He put the weapon, pointed at Yaser, on the counter, and said, "Am I good for this gin?"

Apparently, Defendant then noticed Ahmad behind him because he put the weapon back into his pocket and walked toward Ahmad and the door. Once near the door, Defendant grabbed Ahmad's shirt, and Ahmad told him to let go and leave the store. Defendant again drew his gun and this time pulled back the slide.[1] Ahmad grabbed Defendant's hand and a struggle ensued. Ahmad called for Yaser, who ran to them, pulled a gun from Ahmad's waistband, and pointed it at Defendant's head. The Obid brothers then subdued Defendant and held him until police arrived.

The police arrested Defendant and placed him in the back of the unit while the officer completed his investigation. Defendant became unresponsive and was taken to the hospital. At the hospital, Defendant told the doctor he had an undiagnosed sleeping disorder, though Michael Hardy, the nurse who completed Defendant's intake sheet, testified that Defendant admitted to using drugs that day and that Defendant smelled like alcohol. No toxicology reports were ordered. Defendant was then transferred to jail for intake and booking.

## PROCEDURAL HISTORY

On January 5, 2010, the State filed a bill of information charging Defendant with one count of simple robbery, a violation of La.R.S. 14:65; one count of attempted armed robbery, a violation of La.R.S. 14:27 and La.R.S. 14:64; and one count of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1.

---

[1]Pulling back the slide places a bullet into the chamber of the gun.

On April 5, 2010, Defendant filed a motion, through counsel, to waive trial by jury; the trial judge discussed the matter with Defendant in open court and signed the motion on the same date.

The trial court heard evidence against Defendant concerning the three charges pending against him and found Defendant guilty as charged on all three counts. At a sentencing hearing on April 9, 2010, the trial court sentenced Defendant to seven years at hard labor for simple robbery, fifteen years at hard labor for attempted armed robbery, and ten years at hard labor for possession of a firearm by a convicted felon. The two robbery-related sentences were ordered to be served consecutively, and the remaining sentence was concurrent to the others.

At the end of the sentencing hearing, the State filed a bill of information alleging that Defendant was a second habitual offender, pursuant to La.R.S. 15:529.1. On June 23, 2010, the trial court conducted a hearing and adjudicated Defendant as a second habitual offender. It then vacated Defendant's original sentence for attempted armed robbery and re-sentenced him to thirty years at hard labor pursuant to the second-offender adjudication.

Defendant now appeals, assigning four errors: 1) the trial court erred in trying the case without a jury and without determining whether Defendant's waiver of his right to a jury trial was knowingly and intelligently made; 2) the evidence introduced at trial was insufficient to prove all of the elements of attempted armed robbery beyond a reasonable doubt; 3) the trial court erred in applying the wrong burden of proof in its evaluation of the evidence submitted in support of Defendant's affirmative defense of intoxication; and 4) the trial court erred in permitting the State to use the same predicate offenses in the habitual offender bill of information that

were used to prove the underlying charge of possession of a firearm by a convicted felon.

## DISCUSSION

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is one error patent. The record reflects that Defendant was not advised of his right to remain silent, his right to a hearing, and his right to have the State prove its case before being adjudicated a habitual offender. *See State v. Boutte*, 09-404 (La.App. 3 Cir. 1/13/10), 27 So.3d 1111; *State v. Coleman,* 96-525 (La.App. 3 Cir. 10/7/98), 720 So.2d 381.

To determine whether this is an error that requires correction, we apply the harmless error analysis, promulgated by the supreme court in *State v. Harris*, 95-900 (La. 5/19/95), 654 So.2d 680. The harmless error test requires that we determine whether the proceedings as a whole afforded Defendant fundamental fairness and due process of law. *Id.*; *see also Boutte*, 27 So.3d 1111.

In this case, the State charged Defendant as a habitual offender seeking to enhance his sentence for the conviction of attempted armed robbery and listing a simple robbery conviction from 2004 as the prior conviction. Although Defendant did not testify at the habitual offender hearing, the State introduced the file of the prior conviction from the district court. For proof of identity, the State introduced the pen pack from the prior conviction which included Defendant's photograph. The State also asked the trial judge, who presided over the trial and the habitual offender proceeding, to take judicial notice of Defendant's trial testimony in which he admitted

4

being convicted of the 2004 simple robbery. The trial judge took judicial notice of the Defendant's trial testimony. The trial judge found Defendant to be a second offender.

The question is whether the trial court's failure to advise Defendant of these rights is a harmless error. This court found, in *State v. Washington*, 96-656 (La.App. 3 Cir. 1/15/97), 687 So.2d 575, that the trial court's failure to advise Defendant of his right to remain silent during the habitual offender proceeding was a harmless error. In *Washington*, the defendant was convicted of possession of cocaine. The State filed a habitual offender bill and after a habitual offender hearing, the defendant was found to be a third felony offender and was sentenced to serve thirty years at hard labor without benefit of probation, parole, or suspension of sentence. On appeal, we recognized that the record did not establish that the trial court advised the defendant of his right to remain silent during the habitual offender proceeding. Applying the harmless error analysis, we held, in pertinent part:

> The defendant neither acknowledged his prior offenses nor admitted the truth of the allegations contained in the habitual offender bill of information whereas the state presented the court with competent evidence as to the defendant's identity and prior convictions. The state introduced a pen packet of the sentences that defendant had served for his two prior convictions. Deputy Shirley Green, an expert in fingerprint analysis, took the defendant's fingerprints in court, compared them with the fingerprints included within the pen packet, and concluded that they matched. Additionally, the state asked the court to take judicial notice of the defendant's testimony at his merit trial. The trial judge had also presided over defendant's merit trial where the defendant admitted that he had been previously convicted of two burglaries in Mississippi. In a multiple offender proceeding, the trial judge has the right to take judicial notice of any prior proceeding of the same case over which he presided. *State v. Martin*, 400 So.2d 1063 (La.1981).
>
> We conclude that the state presented sufficient competent evidence to adjudicate the defendant a third offense habitual offender

5

such that if the defendant were not advised of his rights, the omission was merely harmless error.

*Id.* at 583.

In the instant case, the State introduced the file from Defendant's 2004 conviction, including a pen pack that contained his photograph. Additionally, the trial court took judicial notice of Defendant's admission at his merits trial that he had been convicted of simple robbery in 2004. Consequently, we find that the State presented sufficient evidence to prove that Defendant was a second offense habitual offender. The trial court's omission in not advising Defendant of his rights is harmless error.

### *Waiver of Jury Trial*

In this assignment of error, Defendant argues that the trial court failed to determine that Defendant's waiver of a jury trial was knowingly and intelligently made.

Louisiana Code of Criminal Procedure Article 780(A) allows:

> A defendant charged with an offense other than one punishable by death [to] knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury.

This court has further explained that "[w]hile one who is entitled to a jury trial may waive that right, such waiver shall not be presumed but must be established by a contemporaneous record setting forth the articulated appraisal of that right followed by a knowing and intelligent waiver by the accused." *State v. Morris*, 607 So.2d 1000, 1001 (La.App. 3 Cir. 1992), *judgment set aside on other grounds*, 615 So.2d 327 (La.1993).

In the present case, the following colloquy occurred:

**RE: MOTION TO WAIVE JURY TRIAL**

BY MR. DUHE:

> The first issue I want to make sure the record's clear on is the motion to waive trial by jury. Miss deMahy with the Public Defender's Office represents the defendant and has filed a motion. However, I would also ask this Court to question Mr. Bias so he can be on the record as having waived his right to a jury trial.

**QUESTIONING BY THE COURT**

BY THE COURT:

> (ADDRESSING DEFENDANT BIAS)

Q. All right. Mr. Bias?

A. Yes, sir.

Q. Your lawyer has said that, rather than have a jury trial, you want to try your case in the front of a judge, in the front of me. Is that true?

A. Yes, sir.

Q. Okay. So you understand that you could have your case this week in the front of a jury if you wanted?

A. Yes, sir.

Q. You understand that?

A. Yes, sir.

Q. But you'd rather have it in the front the judge?

A. (Nods affirmatively.)

BY THE COURT:

> All right. So ordered. You may proceed.

In determining whether a defendant voluntarily waived his right to jury trial, a trial court is only required to determine whether the defendant's waiver was made

knowingly and intelligently. *See State v. Campbell*, 42,099 (La.App. 2 Cir. 6/20/07), 960 So.2d 363. It "does not require a *Boykin*-like colloquy." *Id.* at 367.

Although concrete requirements for determining if a waiver of jury trial is knowingly and intelligently made do not exist, this court has historically required, at a minimum, that there be a transcript containing a colloquy indicating that Defendant knows that he is entitled to a trial by jury and that he does not want to exercise that right. *See State v. P.T.*, 07-665 (La.App. 3 Cir. 12/5/07), 970 So.2d 1255, *writ denied*, 08-26 (La. 5/30/08), 983 So.2d 895; *State v. Pierre*, 02-277 (La.App. 3 Cir. 10/2/02), 827 So.2d 619 (we reversed the trial court's finding that the defendant had knowingly waived her right to trial by jury when the transcript of the proceedings in which the right to jury trial was waived was missing, and, once found, indicated that the defendant had some doubts about the waiver and did not explicitly waive her right to trial by jury.)[2]

In the instant case, Defendant was questioned by the trial court concerning his decision to waive his right to jury trial and was asked if he understood that he could have his trial in front of a jury if he wished. The trial court then clarified that Defendant wanted to have his trial in front of a judge. Defendant answered these questions affirmatively. Additionally, and prior to the hearing in which Defendant asserted his desire to waive his right to jury trial, counsel for Defendant filed a motion to waive his right to trial by jury on his behalf. The multiple requests, in addition to Defendant's assertions in open court, make it clear that Defendant wanted

---

[2]On writ application, the supreme court reversed our decision in *Pierre*, finding that defense counsel's affirmation that he and the defendant had discussed jury waiver in detail was sufficient. *State v. Pierre*, 02-2665 (La. 3/28/03), 842 So.2d 321.

to waive his right to trial by jury and that he did so knowingly and intelligently. Thus, this assignment of error is without merit.

## *Sufficiency of Evidence*

In his second assignment of error, Defendant argues that the evidence introduced at trial was insufficient to support his conviction for attempted armed robbery.[3] The analysis for such claims has been described by this court as follows:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the State has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Armed robbery is defined by La.R.S. 14:64(A) as: "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Attempt, as defined by La.R.S. 14:27(A), is when "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the

---

[3]Defendant's argument does not address the companion convictions.

circumstances, he would have actually accomplished his purpose." Thus, there is a two-prong test in determining whether the evidence was sufficient to convict Defendant of attempted armed robbery: first, whether Defendant had the specific intent to commit an armed robbery; and second, whether he committed an act tending toward the accomplishment of such a robbery.

In his brief, Defendant acknowledges placing a gun on the counter in front of Yaser, but argues that there is no evidence that he tried to take the bottle of gin and that the record is not clear regarding what he said to Yaser at that moment.

Defendant further contends that the evidence leaves open the possibility that he removed the gun from his pocket simply to search for money. He notes that he did not demand the gin or any money, and he did not approach Ahmad with the gun as he tried to leave the store. He claims that he did not try to force Ahmad away from the door and that he committed no act in furtherance of robbery. Finally, Defendant contends that the Obid brothers did not react as if they were being robbed.

At trial, Yaser stated that Defendant approached the counter and asked for gin. After Yaser picked up a bottle of gin and said, "four thirty-three, please." Defendant rummaged in his own pockets, produced a firearm, and shook it at him. Defendant placed the weapon on the counter, pointing at Yaser. Defendant picked up the gun, asked, "am I good for this gin," and looked nervous. Defendant then put the gun back into his pocket and walked toward Ahmad, who was near the door.

Defendant's interaction with Ahmad need not be discussed, because the attempted armed robbery was already complete by that point. He produced a firearm in the context of his request for gin and pointed it at the man holding the gin; such actions certainly implied a threat as part of an effort to obtain the gin. While the

10

circumstances indicate Defendant may have changed his mind, it is clear that for some period of time, however short, he specifically intended to employ the weapon to help him take the gin. The first prong of the two-part test was met.

Defendant's assertion that the record does not show an act in furtherance of the attempted robbery is inaccurate. His producing the weapon was such an act. "Attempt requires both the specific intent to commit a crime and an act for the purpose of, or an 'overt act,' tending directly toward accomplishment of that crime." *State v. Prine*, 44,229, 44,230, p. 10 (La.App. 2 Cir. 5/20/09), 13 So.3d 758, 764, *writ denied*, 09-1361 (La. 2/5/10), 27 So.3d 298. An act need not be directly proximate to the commission of a crime in order to be properly classified as an overt act. Further, an overt act need not be such that it will result in commission of the crime unless frustrated by extraneous circumstances. *Id*. (citations omitted). Drawing a weapon from one's pocket is an act directly proximate to the commission of a crime and, therefore, exceeds the standards set forth in *Prine*. Thus, the second-prong of the two-part test was met.

To support his assertion that the evidence convicting him was insufficient, Defendant would have us distinguish the instant case from *State v. Frazier*, 37,010 (La.App. 2 Cir. 4/9/03), 843 So.2d 562, *writ denied*, 03-1333 (La. 11/21/03), 860 So.2d 542. Instead, we interpret *Frazier* as analogous with the instant case.

In *Frazier*, the defendant walked toward the front door of a convenience store and donned a ski mask to conceal his identity. A deputy's arrival interrupted the defendant's planned robbery, and, as he fled the scene, he was found with an automatic handgun. The second circuit found that "[it was] immaterial that Frazier did not know which cashier he was actually going to rob, or that she did not yet see

11

him." *Id.* at 564. It further found that all of the defendant's actions: putting on a ski mask, walking toward the store, and carrying an automatic handgun, were "more than mere preparation; they tend directly toward the taking of anything of value belonging to another, from the person of another or her immediate control, by the use of force or intimidation, while armed with a dangerous weapon." *Id.* It then held that "[t]he evidence is sufficient beyond a reasonable doubt to convict Frazier of attempted armed robbery." *Id.*

In this case, Defendant lacked a ski mask, but he had actually entered a store and pointed a weapon at a victim while asking if he was "good for the gin," implying that he would use the gun if denied the gin. Here, entering the store, pointing the gun and asking if he was "good for" the gin are sufficient beyond a reasonable doubt to support Defendant's conviction of attempted armed robbery.

Finally, Defendant argues there were no allegations that he took anything of value or threatened Yaser. The crime at issue is attempted armed robbery; thus, a taking is not required to support a conviction. *See State v. Stone*, 615 So.2d 38, (La.App. 3 Cir.), *writ denied*, 623 So.2d 1302 (La.1993).

For the foregoing reasons, this assignment lacks merit.

### *Burden of Proof for Defense of Intoxication*

In this assignment of error, Defendant argues that the trial court applied the wrong burden of proof in assessing his affirmative defense of intoxication. He argues that he established by a preponderance of the evidence that he was intoxicated at the time of the offense, and the State failed to negate that defense beyond a reasonable doubt.

12

The analysis for an intoxication defense was promulgated in *State v. Wilson*, 44,586, p. 4 (La.App. 2 Cir. 10/28/09), 26 So.3d 210, 215:

> Voluntary intoxication is a defense to a prosecution for simple burglary only if the circumstances indicate that it has precluded the presence of specific criminal intent. La. R.S. 14:15(2). The defendant has the burden of proving the existence of that condition at the time of the offense. The specific legal question is not when the requisite specific intent was formed, but rather whether, at the time the unauthorized entry occurred, the defendant was so intoxicated as to preclude the existence of any specific intent on his part to commit a theft or felony therein. *State v. Davenport*, 08-463 (La.App. 5th Cir.11/25/08), 2 So.3d 445; *State v. Godbolt*, 2006-0609 (La.App. 1st Cir.11/3/06), 950 So.2d 727. When circumstances exist that intoxication could have precluded specific intent, the burden shifts to the state to show beyond a reasonable doubt that specific intent was present. Whether intoxication is sufficient to negate specific intent is a question for the trier of fact. *State v. Davenport, supra*.

In the instant case, the trial court considered La.R.S. 14:15(2) and found that Defendant did not meet this burden of proving intoxication and/or drug use at the time the offense occurred. The trial court noted that the police did not indicate that there was evidence of drug use and that the only indication that Defendant had used alcohol was the slight smell surrounding him. The trial court further noted that no tests were performed to determine whether Defendant had used drugs or alcohol and that Defendant explained to a doctor that he fell asleep in the police car because he suffers from a sleeping disorder. Additionally, the trial court found that Defendant had enough presence of mind to specifically take Gary to the side of the store and out of plain sight, ordered him to empty his pockets, and then demanded certain items of his clothing. The trial court also found that Defendant had the presence of mind to order a specific brand of gin, to pull out a gun when he realized he had no money, to realize there was a problem when Ahmad blocked the door, and to pull his gun out again when trying to leave. Finally, the trial court found that the only things

13

supporting Defendant's affirmative defense were that he had a smell of alcohol about him. The trial court dismissed the notion that a smell of alcohol constituted proof of intoxication, stating "that does not indicate that a person does not–because they drink, does not understand and cannot have specific intent." The trial court found that the defense of intoxication was not proved.

Defendant does not appear to dispute any of the trial court's factual statements but implies that it did not give sufficient weight to some of the evidence regarding Defendant's alleged intoxication. In brief, Defendant asserts that:

> In setting forth its reasons for finding against the affirmative defense of voluntary intoxication, the judge concluded that the only evidence of intoxication was the smell of alcohol. The court: 1) did not assign any weight to the testimony of Mr. Gary concerning the Appellant's demeanor; 2) did not assign any weight to the testimony of [probation and parole officer] Mr. Wescott of repeated drug use; 3) totally disregarded the Appellant's testimony as self-serving; and, 4) disregarded the nurse's testimony as it was a history obtained from only Mr. Bias. The court did not consider the facts that his history was given in close proximity to the events in question nor did it consider the fact that the undiagnosed sleeping disorder reported by Mr. Bias to medical personnel could very well have been associated to drug and/or alcohol abuse and thus, was not inconsistent with the voluntary intoxication defense.

The trial court did not explicitly address these testimonies in explaining why it found against Defendant's affirmative defense of intoxication, though it was well within the trial court's authority to assign as much weight to them as it felt necessary. In this case, the trial court assigned little weight to these testimonies. It is not unreasonable to view Defendant's trial testimony or his statements to the nurse as self-serving, and even the testimony that he had a history of prior drug use did not meet the burden of proof necessary for establishing that he was intoxicated at the time of the offense. It certainly did not prove that he was so intoxicated that he did

not have the ability to form specific intent before committing the offenses discussed herein.

The defense of intoxication must be proved by the defendant, and he must prove that his state of mind, at the time the offense was committed, was such that he was not able to form specific intent to commit the crime. *See State v. Rivers*, 444 So.2d 1384 (La.App. 3 Cir. 1984). The trial court found that Defendant did not prove that he was intoxicated so as to preclude his ability to form specific intent. The trial court did not err by rejecting Defendant's affirmative defense of intoxication. This assignment lacks merit.

### *Use of Predicate Offenses*

In his final assignment of error, Defendant argues the trial court erred by allowing the State to use the same predicate offense, simple robbery, in supporting his conviction as a felon in possession of a firearm and in support of the multiple offender bill filed against him. He alleges that this use constitutes double enhancement, which the supreme court prohibited in *State v. Baker*, 06-2175 (La. 10/16/07), 970 So.2d 948, *cert. denied*, ___ U.S. ___, 129 S.Ct. 39 (2008).

The supreme court has addressed the issue of double enhancement in a string of cases, beginning with *State v. Sanders*, 337 So.2d 1131 (La.1976) (overruled in part by *Baker*, 970 So.2d 948). In *Sanders*, the defendant had previously been convicted of two counts of armed robbery and one count of attempted simple burglary. He was then convicted as a felon in possession of a firearm, pursuant to La.R.S. 14:95.1. In support of this conviction, the state offered proof of his second armed robbery conviction and his attempted simple burglary conviction. The state then sought to enhance the firearm sentence by multiple billing him pursuant to

15

La.R.S. 15:529.1 and listed all three previous convictions in the bill of information. Alleging double-enhancement, Sanders filed a motion to quash that was granted by the trial court. The state took writs to the supreme court.

In considering the facts above, the supreme court noted: the state "has attempted to use defendant's prior conviction twice: first, to establish his status as a convicted felon so as to convict him of the crime, and second to increase the penalty through a multiple bill." *Sanders*, 337 So.2d at 1134. Ultimately, the *Sanders* court found that a sentence under La.R.S. 14:95.1 could not be enhanced under the multiple offender statute because La.R.S. 14:95.1 provided explicit sentences for enhanced punishment, precluding enhancement under any other statute, particularly the multiple offender statute, La.R.S. 15:529.1.

The issue of double enhancement was revisited by the supreme court in *Baker*, 970 So.2d 948. In *Baker*, the defendant was previously convicted of aggravated battery and possession of stolen things. He was subsequently arrested for violating La.R.S. 14:95.1 and was adjudicated a felon in possession of a firearm. In support thereof, the state offered proof of his conviction of aggravated battery. The state then sought to enhance the defendant's conviction of firearm possession under the multiple offender statute, La.R.S. 15:529.1. In the bill of information, the state offered proof of the defendant's conviction for possession of stolen things. The defendant was adjudicated a second offender, and he appealed, claiming that his sentencing as a habitual offender after he had been convicted a felon in possession of a firearm constituted "double jeopardy."

On appeal, the second circuit affirmed the defendant's adjudication and sentence as a habitual offender, and the defendant applied for writs to the supreme

court.  The supreme court ultimately held that the determination in *Sanders* "that a sentence imposed under La.R.S. 14:95.1 may not be further enhanced under the habitual offender statute, was in error."  *Baker*, 970 So.2d at 957.  It overruled *Sanders* regarding that proposition and noted:  "the other holding in *Sanders*,[4] that the State may not seek multiple enhancement of a defendant's sentence on the basis of the same set of prior convictions, was recently cited with approval by this court in *State v. Ruiz*, 2006-1755 p. 12-13 (La.4/11/07), 955 So.2d 81, 89."[5]  *Id*.

---

[4]In *Sanders*, the supreme court stated:

> [The state] has attempted to use defendant's prior conviction twice:  first to establish his status as a convicted felon so as to convict him of the crime, and, second to increase the penalty through a multiple bill.  The trial judge felt that this double use of the same convictions was barred by the prohibition against double jeopardy (or collateral estoppel) and by the guarantee of due process.  Although we affirm the trial court's action in quashing the indictment, we do so for other reasons, finding it unnecessary to reach these constitutional issues.

*Sanders*, 337 So.2d at 1134.  The supreme court went on to hold that:

> [W]e find that the penalty provisions enacted in R.S. 14:95.1 were intended by the legislature to delimit the permissible punishment for that offense because the statute itself takes into account the fact of defendant's previous felony conviction and the legislature gave no indication that it wanted the multiple-billing procedure to remain available as a vehicle for further enlargement of the penalty.
>
>  For the reasons assigned, we conclude that the action of the trial court in quashing the indictment was correct.

*Id*. at 1135.

> In *Baker*, the supreme court stated:
>
>         On review [in *Sanders*], this court discussed two concepts.  First, the court found that the state's attempt to further enlarge Sanders' firearms penalty was an improper attempt to use the defendant's prior convictions twice:  "first, to establish his status as a convicted felon so as to convict him of the crime, and second to increase the penalty through a multiple bill."

 *Baker*, 970 So.2d at 950.  "In finding such a 'double enhancement' improper, the court noted that . . . the state may not use the habitual offender law to enhance a sentence for a conviction under La. R.S. 14:95.1."  *Id*.

 [5] In *Ruiz*, the supreme court cautioned the trial court "that the double enhancement formula it used, *i.e.*, enhancing the penalties provided for the underlying offense as a matter of La.Rev.Stat. 40:982 and then enhancing those enhanced penalties under [La.Rev.Stat.] 15:539.1, on the basis of the same prior convictions, violated this court's rule in *State v. Sanders*, 337 So.2d 1131, 1134 (La.

Although these cases made clear that a sentence cannot be enhanced twice using the same underlying convictions, they are factually distinguishable from the instant case. In the cases discussed above, the state used a prior conviction to adjudicate the defendant a felon in possession of a firearm and then sought to enhance the firearm conviction under the multiple offender bill using a different underlying conviction. In the instant case, the State used Defendant's prior convictions in three simple robberies to adjudicate him a felon in possession of a firearm and then sought to use the same underlying convictions for simple robbery in support of adjudicating Defendant a multiple offender.

Defendant argues that the holdings in the previous cases, particularly in *Baker*, apply to the instant case, and prohibit the State from using the same predicate convictions to enhance two separate sentences arising from the same offense. Applying Defendant's interpretation of the case law would lead to absurd results.

The supreme court recently addressed a situation almost identical to the instant case, in *State v. Foster*, 09-617 (La. 11/25/09), 23 So.3d 885. In *Foster*, the state used a single prior conviction, second offense possession of marijuana, in support of the charge that the defendant was a third time offender in possession of marijuana and also to enhance his sentence for possession with intent to distribute cocaine. The trial court adjudicated the defendant a third-time habitual offender and sentenced him to thirty-five years for possession with intent to distribute. The second circuit overturned the trial court, interpreting *Baker* as preventing the state from using the same underlying conviction to enhance two separate charges.

1976) (the State may not seek multiple enhancement of a defendant's sentence on the basis of the same set of prior convictions)." *Ruiz*, 955 So.2d at 89.

18

The supreme court granted writs and clarified that "*Baker* considered the question of 'double enhancement' in the context of a single conviction." *Foster*, 23 So.3d at 885. It further held that:

> [D]ouble enhancement for purposes of *Baker* (*i.e.*, enhancement of enhanced penalties) did not occur because the state used that conviction only once on the count charging third offense possession of marijuana (to enhance the status of the crime and punishment from a second to third offense) and only once on the separate conviction for possession of cocaine with intent to distribute, to enhance defendant's status from a second to third offender for sentencing purposes under the habitual offender law in La.R.S. 15.529.1.

*Id.* at 885-86.

Based on the clear holdings of the supreme court, we find that the State did not commit double enhancement in using the prior convictions of simple robbery only once to support Defendant's conviction as a felon in possession of a firearm and only once to enhance Defendant's sentence for attempted armed robbery. Thus, this assignment lacks merit.

## DECREE

For the foregoing reasons, we find that Defendant validly waived his right to jury trial, and we uphold his convictions, adjudications, and sentences.

**AFFIRMED.**

19