STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-624

CONSOLIDATED WITH

12-625

STATE OF LOUISIANA

VERSUS

MICHAEL WAYNE JONES

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NOS. 127273 AND 133793
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Jimmie C. Peters, J. David Painter, and James T. Genovese, Judges.

CONVICTIONS AFFIRMED; HABITUAL OFFENDER
SENTENCE VACATED; AND REMANDED FOR
RESENTENCING WITH INSTRUCTIONS.

Beth S. Fontenot
Louisiana Appellate Project
Post Office Box 3183
Lake Charles, Louisiana 70602-3183
(337) 491-3864
COUNSEL FOR DEFENDANT/APPELLANT:
    Michael Wayne Jones

**Michael Harson**
**District Attorney—Fifteenth Judicial District**
**Alan P. Haney**
**Assistant District Attorney**
**Post Office Box 4308**
**Lafayette, Louisiana  70502**
**(337) 291-7009**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Michael Wayne Jones, appeals his habitual offender adjudication and sentence. He alleges insufficiency of the evidence relative to his two predicate burglary offenses and excessive habitual offender sentence. For the following reasons, we affirm Defendant's convictions on the predicate burglary offenses and vacate his habitual offender sentence due to error patent.

## FACTS AND PROCEDURAL HISTORY

On August 20, 2009, Dr. Stephen Goodeaux arrived at his veterinary clinic in Scott, Louisiana, and discovered that someone had broken a window near the door and gained entry to the clinic. He also noticed that the steering column of the company truck, which was parked outside the clinic, had been destroyed. The perpetrator left behind blood evidence inside the clinic that was eventually linked to Defendant. Investigating officers secured a search warrant for Defendant's DNA and confirmed that he was the perpetrator. In a recorded statement, Defendant confessed to breaking into the veterinary clinic and to damaging the truck in an attempt to drive it home.

Defendant was charged with two counts of simple burglary. Following a two-day jury trial, Defendant was found guilty on both counts.

The State then filed a habitual offender bill against Defendant, charging him as a fourth felony offender. Defendant was sentenced on his original simple burglary convictions to twelve years at hard labor on each count, to run concurrently with each other. Thereafter, Defendant was adjudicated a fourth felony offender; his previous sentence was vacated; and, he was sentenced to life

imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[1]

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we note that there is one error patent.

In docket number 127273, for each of the two counts of simple burglary, Defendant was sentenced to serve twelve years at hard labor, to run concurrently. The State filed a habitual offender bill under docket number 133793, seeking to have Defendant declared a fourth felony offender and sentenced to life imprisonment. The habitual offender bill listed only a single conviction of simple burglary under docket number 127273. Defendant denied the allegations of the bill, and a habitual offender proceeding was held. At the start of the hearing, the prosecutor, in giving the procedural history of the case, noted that Defendant was convicted of two counts of simple burglary in docket number 127273. After evidence was presented, the court vacated the previous sentence that it imposed and imposed a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

A review of the habitual offender bill and the subsequent habitual offender proceeding reveals that only one of the simple burglary sentences was enhanced. Consequently, we find that the trial court erred in failing to specify which one of Defendant's two sentences it enhanced. In *State v. Webster*, 95-605, p. 9 (La.App. 3 Cir. 11/2/95), 664 So.2d 624, 630, this court addressed a sentencing issue similar to the one at issue in the present case:

---

[1]The trial court did not designate which burglary sentence was vacated, which is addressed below as an error patent.

2

By these assignments of error, the defendant contends the trial court erred in failing to specify which of the four convictions was being enhanced at sentencing and in failing to sentence him on the additional three counts within a reasonable amount of time.

The defendant notes that the trial court did not specify which armed robbery conviction was being enhanced. Nor did the court sentence the defendant on the remaining three convictions. The defendant further contends the trial court should be divested of jurisdiction on the three remaining counts as he will not be sentenced on them within a reasonable amount of time.

We agree[] that the trial court erred in that the record does not reveal which of defendant's four armed robbery convictions was being enhanced. Additionally, the trial court should have imposed a separate sentence on each of the three remaining convictions. Therefore, defendant's sentence is indeterminate as he was convicted of four counts of armed robbery and only a single sentence was imposed. See *State v. Bessonette*, 574 So.2d 1305 (La.App. 3 Cir.1991); La.Code Crim.P. art. 879. Accordingly, defendant's sentence will be vacated and the case remanded to the trial court for clarification as to which count is being enhanced and for imposition of separate sentences on the remaining three counts. See *State v. Parker*, 593 So.2d 414 (La.App. 1 Cir.1991).

In *State v. Clennon*, 98-1370 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, the defendant was convicted of two counts of armed robbery. On appeal, our brethren of the fifth circuit found patent error occurred when the trial court failed to specify which of the two sentences it intended to enhance:

The second patent error in the record is that the trial court erred in failing to specify which of defendant's two sentences it intended to enhance pursuant to the habitual offender bill. The amended commitment also fails to indicate which of defendant's sentences was enhanced. Because defendant's two convictions arose from a single criminal episode, only one could be enhanced. *State ex rel. Porter v. Butler*, 573 So.2d 1106, 1108 (La.1991). It is the opinion of this Court that the we must vacate the habitual offender sentence and remand the case to the trial court for re-sentencing, with the instruction that the trial court specify which of defendant's two sentences are to be enhanced. See *State v. Stack*, 97-1176, (La.App. 5th Cir. 4/15/98), 710 So.2d 841, 845. Furthermore, in reference to the sentencing, this Court notes that the amended commitment incorrectly states that the defendant was convicted on Count 1 and Count 2 of the bill of information rather than the correct Count 1 and Count 3. This must be corrected upon re-sentencing.

*Id.* at 165.[2]

Additionally, in *State v. Elie*, 10-1494 (La.App. 3 Cir. 10/5/11), 74 So.3d 1216, *writ denied*, 11-2786 (La. 4/13/12), 85 So.3d 1246, this court remanded the case for resentencing due to the defendant's absence from sentencing, an assigned error. On error patent review, this court noted:

> In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We find one such error. Although the trial court acknowledged that there were two counts, it appears it enhanced only one of Defendant's sentences at the habitual offender proceeding for possession of a firearm by a convicted felon. For reasons provided below, we remand this matter to the trial court for resentencing, at which time the trial court must specify which of Defendant's two convictions is being enhanced. *State v. Clennon*, 98-1370 La.App. 5 Cir. 6/30/99), 738 So.2d 161; and *State v. Webster*, 95-605 (La.App. 3 Cir. 11/2/95), 664 So.2d 624.

*Id.* at 1219.

Considering the foregoing jurisprudence, we are required to vacate Defendant's habitual offender sentence, remand the matter to the trial court for resentencing, and order the trial court to specify which of Defendant's two burglary sentences is being enhanced and which original sentence is being vacated.

## ASSIGNMENTS OF ERROR

Defendant presents the following three assignments of error on appeal:

I.     The evidence was insufficient to convict Mr. Jones because the State failed to prove that Mr. Jones possessed the specific intent necessary in light of the direct testimony of Mr. Jones that his intoxicated and drugged state prevented him from forming the specific intent necessary to commit simple burglary.

II.    In the alternative, the State failed to prove Mr. Jones committed the offense of simple burglary of the vehicle because the State

---

[2]We note that at the time of the *Webster* and *Clennon* opinions, it was permissible to enhance only one of multiple convictions arising out of a single criminal episode. However, the supreme court has since held that La.R.S. 15:529.1 does not prohibit enhancing multiple sentences obtained the same date arising out of a single criminal episode. *State v. Shaw*, 06-2467 (La. 11/27/07), 969 So.2d 1233.

failed to prove that Mr. Jones specifically intended to commit a felony "therein."

III. The mandatory life sentence is unconstitutionally excessive under the facts of this case.

## ASSIGNMENT OF ERROR NUMBER ONE

In this assignment of error, Defendant argues that the evidence was insufficient to convict him because the State failed to prove he possessed the specific intent necessary to commit simple burglary of the veterinary clinic and vehicle. Defendant contends that his intoxicated and drugged state is a defense to specific intent, an essential element of simple burglary.

The analysis for a claim of insufficient evidence is well-settled:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La.4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id*.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

Simple burglary is defined as "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60 [aggravated burglary]." La.R.S. 14:62(A). This court in *State v. Bias*, 10-1440, p. 13 (La.App. 3 Cir. 5/4/11), 63 So.3d 399, 408, *writ denied*, 11-1063 (La. 11/14/11), 75 So.3d 939, referred to an analysis for an intoxication defense

5

promulgated in *State v. Wilson*, 44,586, 44,737, p. 4 (La.App. 2 Cir. 10/28/09), 26 So.3d 210, 215, *writ denied*, 09-2655 (La. 1/28/11), 56 So.3d 973:

> Voluntary intoxication is a defense to a prosecution for simple burglary only if the circumstances indicate that it has precluded the presence of specific criminal intent. La. R.S. 14:15(2). The defendant has the burden of proving the existence of that condition at the time of the offense. The specific legal question is not when the requisite specific intent was formed, but rather whether, at the time the unauthorized entry occurred, the defendant was so intoxicated as to preclude the existence of any specific intent on his part to commit a theft or felony therein. *State v. Davenport*, 08-463 (La.App. 5th Cir.11/25/08), 2 So.3d 445; *State v. Godbolt*, 2006-0609 (La.App. 1st Cir.11/3/06), 950 So.2d 727. When circumstances exist that intoxication could have precluded specific intent, the burden shifts to the state to show beyond a reasonable doubt that specific intent was present. Whether intoxication is sufficient to negate specific intent is a question for the trier of fact. *State v. Davenport*, supra.

See also *State ex rel. D.D.*, 11-1384 (La.App. 3 Cir. 3/7/12), 86 So.3d 171.

In its opposition, the State asserts that Defendant did not raise the defense of intoxication at trial. The record reflects, however, that in closing argument, defense counsel urged the jury to consider Defendant's intoxicated and drugged state as a defense to the element of specific intent. Additionally, with regard to specific intent, the trial court instructed the jury to consider the defense of intoxication as follows:

> Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.

> The fact that a defendant was in an intoxicated condition at the time of the commission of the crime is usually not a defense. However, where the circumstances indicate that the defendant voluntarily became intoxicated or drugged and that his intoxicated condition precluded the presence of a specific criminal intent required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
> Voluntary intoxication is a defense to the charge of simple burglary only if the circumstances indicate that it has precluded the

6

presence of specific criminal intent. The specific legal question is not whether the requisite specific intent was formed but, rather, whether at the time the unauthorized entry occurred the defendant was so intoxicated as to preclude the existence of any criminal -- any specific intent on his part to commit a theft or felony therein.

A review of the record herein indicates that there were no eyewitnesses to the offenses. Dr. Goodeaux testified that on August 20, 2009, he discovered that someone had broken into his veterinary clinic. The window to the left of the front door had been knocked out. Dr. Goodeaux also observed credit card receipts in the driveway outside the clinic which had been removed from a drawer located inside the clinic. After the police had secured the building, Dr. Goodeaux went through the building and confirmed that none of the pharmaceuticals were missing. Glass from the window was scattered around the front room, and blood spots were observed throughout the clinic. The drawers in the front desk appeared as though someone had rummaged through them; they were left open. Dr. Goodeaux also testified about a truck he had purchased for his veterinary practice that was parked in front of the clinic; he had not yet started using the truck. The steering column of the truck had been destroyed.

On cross-examination, Dr. Goodeaux indicated that some things were missing from the front drawer, including stamps, pocket change, and a prescription belonging to his secretary. He stated that he learned about the missing stamps from his secretary.

Amy Miller, Dr. Goodeaux's veterinary assistant, testified that when she arrived at work on August 20, 2009, she observed that a window had been smashed in and that someone had invaded the building. Ms. Miller saw blood on the floor and throughout the clinic and noticed that someone had gone through the drawers in the both the secretary's office and Dr. Goodeaux's office. A binder in which clients' credit card receipts were stored was found outside the clinic in a ditch.

7

Ms. Miller also stated that the truck parked outside was damaged after she left work the previous day.

On cross-examination, Ms. Miller explained that she shared the front desk with the secretary. A tray was missing that contained stamps, loose change, and things of that nature. She was not certain, however, of the exact time the secretary's prescription went missing, only that it was not there when she arrived that morning.

Sergeant Gary Nezat, with the City of Scott Police Department, testified that when he arrived at the scene, he recovered a stone found at the base of the broken window; the stone had blood on it. He also observed blood on the fabric window blind and on a bloody rag inside the window. Once inside the building, Sergeant Nezat did not see anything out of the ordinary or that appeared to be disturbed. He stated that the steering column on the truck parked at the clinic had been "busted."

Sergeant Nezat submitted into evidence several swabs of blood that were collected at the scene, along with the bloody rag. On cross-examination, Sergeant Nezat confirmed that he wrote in his report, "After the inventory of the business by personnel, no property had appeared to be missing."

Detective Durand Hebert, with the City of Scott Police Department, testified that he photographed the broken window of the office, the blood droplets throughout the building, and the damaged truck parked outside the building. Detective Hebert identified photographs of the secretary's chair with blood on it, the desk with opened drawers, the wooden desk top and counter top with blood on them, and the damaged steering column and ignition of the truck. Based on his experience, Detective Hebert believed that the truck had been tampered with in an attempt to start it without the keys.

The biological material collected at the crime scene was submitted to be analyzed and compared to the CODIS (Combined DNA Index System). The blood samples were subsequently matched to Defendant. Detective Hebert then obtained a search warrant to secure biological material from Defendant to compare and either confirm or eliminate him as a suspect. Defendant was interviewed on April 9, 2010, after he waived his *Miranda* rights. Detective Herbert testified that Defendant did not appear intoxicated, and he freely and voluntarily answered the questions. Detective Hebert did not tell Defendant about specific facts of the offenses; Defendant volunteered the facts heard on the recorded statement. An audio recording of Defendant's interview was played for the jury.

In his recorded statement, Defendant indicated he was drunk and had smoked crack cocaine prior to the commission of the offenses. Although he did not remember the time he committed the offenses, he recalled that he was alone. He could also remember some of the details of the offenses. Defendant stated that he first tried to break the front window of the veterinary clinic by kicking it. He then took what may have been a brick, threw it through the window, reached through the broken window, and opened the door. Defendant testified that once he realized what he was doing, he left the building. When Detective Hebert informed him that his blood was found on the counters and drawers of the clinic, Defendant then admitted that he had rummaged through the desk drawers. He maintained, however, that he was searching for a Band-Aid for his bleeding hand. Defendant reiterated that he was under the influence of alcohol and crack cocaine and did not know what happened.

With regard to the truck, Defendant recalled that the door to the truck was "open," and he looked inside for a Band-Aid. He then found a screwdriver on the floorboard of the truck and unsuccessfully tried to turn the ignition with

9

screwdriver. Defendant stated that he intended to drive the truck home if it would have the started. When the truck did not start, he headed home on foot and later hitch-hiked a ride to his home.

Bethany Harris, a DNA analyst at the Acadian Crime Lab, testified that a DNA profile was developed from one of the swabs entered into a database. The DNA profile matched another DNA profile, that of Defendant, already in the database. After Defendant was located, a reference sample was obtained from him to confirm that the DNA from the crime scene belonged to him. The profile obtained from the reference was the same profile obtained from the evidence sample. To a reasonable degree of scientific certainty, Ms. Harris stated that Defendant was in fact the source of the DNA profile obtained from the blood on the swab collected at the scene. The report issued by the crime lab was offered into evidence.

In closing arguments, defense counsel raised the possibility of Defendant's intoxication and drugged state as a defense for simple burglary. However, the only evidence introduced at trial that Defendant was intoxicated and/or under the influence of drugs was his recorded statement taken almost eight months after the offenses. Also, Defendant was able to recall details of the offenses that had not been shared with him by police prior to his statement. As noted by this court in *State ex rel. D.D.*, 86 So.3d at 178:

> A defendant's voluntary intoxication may be asserted as a defense "where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime." La. R.S. 14:15(2). "It is, however, an affirmative defense, and the burden is on defendant to prove by a preponderance of the evidence that he was in fact intoxicated at the time of the offense." *State v. Mack*, 45,552, p. 3 (La.App. 2 Cir. 8/11/10), 46 So.3d 801, 803. *See also State v. Bias*, 10-1440 (La.App. 3 Cir. 5/4/11), 63 So.3d 399, *writ denied*, 11-1063 (La.11/14/11), 75 So.3d 939.

10

Without any additional evidence of Defendant's intoxication or drug use at the time of the offenses, combined with his ability to recall specific details about the offenses, we find that he did not prove by a preponderance of the evidence that he was so intoxicated or under the influence of drugs at the time of the offenses in order to preclude specific intent on his part to commit a theft or felony while inside the veterinary clinic and vehicle. As such, there is no merit in this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

In the alternative, Defendant argues that the State failed to prove he committed simple burglary of the vehicle. Defendant contends that the State did not prove he specifically intended to commit a felony after entering the truck because he did not take anything of value from inside the truck. Defendant concedes that he tried to use the truck to drive home.

Dr. Goodeaux's testimony reflects that the steering column of the truck was destroyed, which is consistent with Detective Hebert's opinion that the perpetrator tried to start the truck without keys. However, no testimony or evidence was introduced to show that Defendant took anything of value from inside the truck. Accordingly, Defendant contends that the taking or using a truck without authorization constitutes a felony; it does not constitute a felony or theft therein or inside the vehicle.

Defendant acknowledges that in *State v. Craig*, 32,209 (La.App. 2 Cir. 8/18/99), 747 So.2d 604, the court held that the defendant found trying to steal a vehicle could be convicted of simple burglary and that the theft of an entire movable constituted a theft therein. In reaching this conclusion, the court stated:

> A violation of La. R.S. 14:62, simple burglary, occurs when a person enters into a structure (a vehicle is explicitly included) without authority and with the specific intent to commit a felony or theft

11

*therein*.  *State v. Robinson*, 29,488 (La.App.2d Cir.06/18/97), 697 So.2d 607; *State v. Mitchell*, 96-207 (La.App. 3d Cir.10/09/96), 684 So.2d 6.  Simple burglary has substantial inchoate or incomplete elements, i.e., an unauthorized entering of a vehicle with the intent to commit a theft therein.  If the intent is present, an actual theft does not have to be consummated.  In this respect, simple burglary is also an attempted theft.

. . . .

Whether an actor is charged with attempted theft or simple burglary is within the discretion of the prosecuting authority.  That the prosecution could have chosen to charge defendant with attempted theft is of no moment.  It is not unusual that an accused's conduct falls within the definition of more than one criminal statute with significant differences in penalties.  The district attorney has the sole discretion to choose under which law he will prosecute.  See *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); La. R.S. 14:4; La.C.Cr.P. art. 61; *State v. Walters*, 440 So.2d 115 (La.1983); *State v. Flores*, 27,736 (La.App.2d Cir.02/28/96), 669 So.2d 646.

. . . .

. . . While defendant poses an interesting question, i.e., whether the theft or attempted theft of an entire movable constitutes a theft therein, the fact remains that if someone is inside a vehicle attempting to steal that vehicle, his intent is to commit a theft therein, not only of the contents but of the vehicle itself.  See *State v. Augustus*, 93-406 (La.App. 5th Cir.02/23/94), 633 So.2d 783; *State v. Pierce*, 450 So.2d 730 (La.App. 5th Cir.1984).

*Id*. at 606.

Defendant stresses that since the 1999 *Craig* decision, La.R.S. 14:67.26 was enacted, clearly defining theft of a motor vehicle.[3]  Section A of La.R.S. 14:67.26 reads, in pertinent part, as follows:

Theft of a motor vehicle is the intentional performance of any of the following acts:

(1) The taking of a motor vehicle, which belongs to another, either without the owner's consent or by means of fraudulent conduct, practices, or representations, with the intention to permanently deprive the owner of the motor vehicle; or

---

[3]Louisiana Revised Statutes 14:67.26 was added by 2008 La. Acts No. 633, § 1 and amended by 2010 La. Acts. No. 585, § 1.

(2) The taking control of a motor vehicle that is lost or mis-delivered under circumstances which provide a means of inquiry as to the true owner, and the person in control of the motor vehicle does not make reasonable efforts to notify or locate the true owner; or

(3) The taking control of a motor vehicle when the person knows or should have known that the motor vehicle has been stolen.

Defendant also points out that the legislature specifically defined the unauthorized use of a motor vehicle as a separate and distinct offense in La.R.S. 14:68.4(A), which reads, " Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently." By these specific enactments, Defendant maintains that the legislature clearly intended for the unauthorized use or the taking of a vehicle to be prosecuted under one of these provisions rather than simple burglary. Defendant concludes that the element of simply burglary, the specific intent to commit a felony or theft therein, does not apply when the intent is to take or use a vehicle without authorization.

Prior to *Craig*, this court in *State v. Morris*, 614 So.2d 180, 184 (La.App. 3 Cir. 1993), found that, "When defendant crawled into the cab of the truck with the intent to commit a theft of the truck or any of its parts, or with the intent to commit a felony, such as unauthorized use of a movable, he was committing simple burglary." In addition to his lack of authority or the owner's consent to enter or use the truck, the court found the fact that the defendant immediately started the truck, drove it off a car lot, and sought the help of another person to hide the truck established that he entered the truck with the intent to commit a theft or other felony.

The record herein reflects that Defendant did not take anything of value from inside the truck but, instead, damaged the steering column of the vehicle in an

13

attempt to take the truck. In *State v. Wilson*, 26 So.3d at 215, the court stated:

> Although intent to commit a burglary is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances. *State v. Robinson*, 29,488 (La.App. 2d Cir.6/18/97), 697 So.2d 607, *writ denied*, 1997-1845 (La.12/12/97), 704 So.2d 1200. A taking is not required. *State v. Wright*, 36,635 (La.App. 2d Cir.3/7/03), 840 So.2d 1271. Displacement of the victim's possessions may be indicative of the specific intent to commit a theft. *State v. Bell*, [42,394 (La.App. 2 Cir. 12/5/07), 972 So.2d 1207]; *State v. Wright*, *supra*.

Similarly, the court in *State v. Jones*, 97-2591, p. 8 (La.App. 4 Cir. 9/8/99), 744 So.2d 165, 169, *writ denied*, 99-3141 (La. 4/7/00), 759 So.2d 91, explained, "The essence of burglary . . . is an unauthorized entry with criminal intent; a taking is not required." Considering this court's ruling in *State v. Morris*, 614 So.2d 180, and the related jurisprudence, we find that the elements of simple burglary of the vehicle herein were proven by the State at trial; thus, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

By this assignment of error, Defendant argues that his mandatory life sentence is unconstitutionally excessive under the facts of this case. In light of the fact that we vacate Defendant's habitual offender sentence due to an error patent, this assignment of error is rendered moot.

## DISPOSITION

Defendant's burglary convictions are affirmed. His habitual offender sentence is vacated, and the matter is remanded for resentencing with the trial court being ordered to specify which of Defendant's two burglary sentences is being enhanced and which original sentence is being vacated.

**CONVICTIONS AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED; AND REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**

14